PEOPLE v YACKS

1. CRIMINAL LAW—EXTRAJUDICIAL STATEMENTS—VOLUNTARINESS—AP-
   PEAL AND ERROR—BINDING DETERMINATIONS—REMAND—NEW
   TRIAL.

   The sole purpose of a *Walker* hearing is to determine the fact of
   voluntariness of statements, admissions, or confessions of the
   defendant; where a *Walker* hearing was held with respect to
   certain statements of a defendant and they were found to be
   voluntarily made, where the defendant was subsequently con-
   victed but was granted a new trial on appeal, and where the
   Court of Appeals reviewed the *Walker* hearing and affirmed the
   trial judge's findings in the first trial, the judge in the subse-
   quent trial was not obligated to reinquire into the voluntari-
   ness of the same statements but was bound by the determina-
   tion of the Court of Appeals.

2. CRIMINAL LAW—WITNESSES—IDENTIFICATION—IMPERMISSIBLE TAINT
   —BURDEN OF PROOF.

   The burden of showing that a witness's subsequent trial identifi-
   cation of a defendant is free from the taint of impermissible
   pretrial circumstances is on the prosecution.

3. CRIMINAL LAW—EVIDENCE—STATUTES—SIMILAR ACTS—INSTRUC-
   TIONS TO JURY.

   Ordinarily evidence that a defendant had perpetrated other
   criminal acts is inadmissible at trial as being collateral and
   because of the prejudice it brings to the minds of the jurors;
   however, testimony in a murder trial that the defendant and
   an identified companion had robbed the witness at gunpoint
   using a distinctive weapon similar to that identified as the
   murder weapon was properly admitted for the sole purpose of
   identifying the defendant as the party possessing the murder

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence § 529 *et seq.*
[2] 30 Am Jur 2d, Evidence § 1143.
[3] 53 Am Jur, Trial § 98.
[4] 53 Am Jur, Trial § 111.
[5] 29 Am Jur 2d, Evidence §§ 298–304.

weapon where the jury was properly instructed concerning the limited use of such evidence under the similar acts statute and the evidence was material because the defense theory was that although defendant was present at the scene of the murder he was innocent of any criminal intent and didn't know that his companion would commit the crime (MCLA 768.27).

4. CRIMINAL LAW—WITNESSES—INDORSEMENT—LATE INDORSEMENT—PREJUDICE—FAILURE TO REQUEST ADJOURNMENT.

A defendant may complain of error in allowing the prosecutor to indorse a witness on the day of trial only if he shows prejudicial surprise and is deprived of an opportunity to meet the evidence by the court's denial of an adjournment motion or otherwise; lack of a request to continue or adjourn, or at least a request to interview the witness, while never considered as a strict requirement, tends to negate the argument that tardy indorsement was prejudicial, and a conviction under such circumstances will not be disturbed without some showing of prejudice to the defendant.

5. CRIMINAL LAW—EVIDENCE—STATUTES—SIMILAR ACTS—SUBSEQUENT CRIMES.

Evidence in a murder trial of subsequent crimes committed with a distinctive weapon similar to the murder weapon and accompanied by an accused companion who died before trial was properly admitted under the similar acts statute where the evidence against the defendant was largely circumstantial and such evidence was not used solely to show propensity to commit crime but was used to show that defendant was at least present at the scene of the murder and served to show intent and negative defendant's claim that he was an innocent bystander (MCLA 768.27).

Appeal from Genesee, Donald R. Freeman, J. Submitted Division 2 August 7, 1973, at Lansing. (Docket No. 14968.) Decided September 24, 1973.

Ricky G. Yacks was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

*Biesman & Megdell,* for defendant on appeal.

Before: LESINSKI, C. J., and DANHOF and BASH-ARA, JJ.

LESINSKI, C. J. Harold Peck, a service station attendant, was slain in a robbery on January 19, 1970. Defendant was charged and convicted under the felony-murder statute, MCLA 750.316; MSA 28.548. This Court heard an appeal from that conviction and returned the cause to the trial court to determine whether a certain witness, whom defendant was not allowed to cross-examine as to his juvenile record, did in fact have a juvenile record. *People v Yacks,* 38 Mich App 437; 196 NW2d 827 (1972). A new trial was granted on the basis that it was erroneous for the trial judge in the first trial to deny defendant the right to cross-examine a prosecution witness concerning his juvenile record.

The second trial before a jury resulted in a first-degree murder conviction and life sentence. This appeal followed.

I

The first issue we confront on appeal is whether there was error in denial of defendant's request for a *Walker* hearing prior to a second trial, where a *Walker* hearing concerning the same confession had been held prior to the first trial. *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

When a defendant is granted a new trial, his case stands in the same place procedurally as though there had been no trial previously. *People v Peck,* 147 Mich 84; 110 NW 495 (1907). Defendant claims that in his case the trial judge is

obliged to reinquire into the voluntariness of any admission, confession, or statement by way of a second *Walker* hearing. We cannot agree. To say that a trial judge must reexamine the voluntariness issue in this case misinterprets both the purpose of the *Walker* hearing and the role of a reviewing court in the judicial process.

In *People v Robinson,* 386 Mich 551, 557; 194 NW2d 709, 710 (1972), our Supreme Court stated that the "sole purpose of the *Walker* hearing is to determine the fact of voluntariness and a reviewing court is concerned only with the correctness of that determination". In its review of the first *Yacks* trial, the Court of Appeals found that a statement made by the accused to Flint Police Department detectives was indeed voluntary. *Yacks, supra,* at 440; 196 NW2d at 828. The trial judge in the second trial was thus bound by that determination. *People v Whisenant,* 384 Mich 693, 702–703; 187 NW2d 229, 233 (1971).

## II

Next, was it error to refuse to suppress an identification of defendant made by a witness in a prior confrontation violative of standards set forth in *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967)?

Witness Jerry H. Crocker testified that he had seen the accused at the gas station immediately prior to the victim's death. At a hearing on a motion to suppress, witness Crocker stated that he had been at the station for about ten minutes, paying for gasoline and purchasing a package of cigarettes. While inside the station with the deceased for 2–3 minutes, the witness saw two men. He identified one man, standing close to the station door reading a magazine, as wearing a green

jacket similar to an Army fatigue jacket and as
having dark hair and dark eyes. The witness also
identified this person as being dark complected
and needing a shave. This identification was fur-
nished to the Flint Police Department on the day
following the murder. Having described the man
in the gas station as being dark complected, Mr.
Crocker nevertheless identified the defendant (who
is light complected) as being the person he had
seen reading a magazine in the station shortly
before Mr. Peck's death.

Defendant's principal objection is that in fact
witness Crocker's identification of the accused was
not based on his experience at the gas station, but
rather upon an impermissibly suggestive one-on-
one confrontation arranged by Flint Police Depart-
ment detectives at a time when the accused was
without counsel. At the defendant's preliminary
examination, Mr. Crocker sat at the rear of the
courtroom. The accused was brought into the
courtroom by sheriff's deputies. He was attired in
jail clothing. At this time Detective Hatchew, in
charge of this case, was seated in front of Mr.
Crocker. When the defendant was seated, Detec-
tive Hatchew turned to Mr. Crocker and at that
time Mr. Crocker identified defendant as the per-
son he had seen at the station. Mr. Crocker was
not asked to testify at the preliminary examina-
tion.

This identification-confrontation occurred follow-
ing the issuance of a warrant for Mr. Yacks'
arrest. The *Wade-Gilbert* right to counsel had
attached. *United States v Wade, supra; Gilbert v
California,* 388 US 263; 87 S Ct 1951; 18 L Ed 2d
1178 (1967). See *Kirby v Illinois,* 406 US 682; 92 S
Ct 1877; 32 L Ed 2d 411 (1972).

At issue then is whether this confrontation was

impermissibly suggestive and whether it alone would lead to a likelihood of irreparable misidentification. The burden of showing witness Crocker's subsequent trial identification free from the taint of impermissible pretrial circumstances is on the prosecution. *People v Young,* 21 Mich App 684; 176 NW2d 420 (1970).

Upon reviewing the record we conclude, as did the trial court, that the prosecutor met this burden and that witness Crocker's trial identification of Yacks was based on his face-to-face meeting at the murder scene and not at the courtroom confrontation one month later. We note for the benefit of the profession and especially the law enforcement community, that the allegations of deliberate, intentional staging of the identification confrontation by the Flint Police Department are not supported by this record. Were we to find this confrontation was a deliberate attempt to avoid the rules set forth in the *Wade-Gilbert-Stovall* trilogy, the result would be the opposite. *United States v Wade, supra; Gilbert v California, supra; Stovall v Denno,* 388 US 293; 87 S Ct 1967; 18 L Ed 2d 1199 (1967). We would not countenance this "in-courtroom" sham to avoid the due process considerations of *Wade.*

## III

Further, on appeal it is contended that the trial court erroneously denied defense counsel an opportunity to develop his theory of the case.

During the course of their investigation of this homicide the police developed several leads. One of these clues led them to Jimmy Willford. Willford had previously sought employment with the police department both as an officer and later as an informer. During the course of interrogation, he

related several different stories to the detectives who questioned him. He implicated defendant Yacks and Elmer Hall in the crime. On the basis of Willford's conversations with the police and his affidavit, a search warrant was issued. The murder weapon and a gun stolen from the station (the objective of the robbery) were recovered from Yacks' home. Hall and Yacks were arrested and charged with first-degree murder. Codefendant Willford hanged himself in his jail cell prior to trial after several unsuccessful attempts at self-destruction. Hall was later completely exonerated, while the defendant was convicted, at least in part, on the same evidence.

During his cross-examination of Detective Hatchew, defense counsel sought to show the arrest and confinement of Mr. Hall and his subsequent exoneration. The trial court ruled that this was collateral and ordered counsel to abandon this line of questioning. Here the evidence sought to be elicited was not a theory of defense. Rather, it was an attempt to impeach Detective Hatchew. Whether he believed what Willford had told him was entirely collateral and the trial court properly exercised his discretion in limiting testimony pertaining thereto.

Furthermore, we see no prejudice to the defendant here. Following argument on the point, and a ruling by the trial court, defense counsel did establish that Mr. Hall had been wrongly arrested, incarcerated, and released on the basis of Willford's story to police. Therefore, we find that the jury had before it the unmistakable inference that the defense counsel wished—*i.e.,* that the police had made a terrible error in arresting Mr. Hall, and they could have made the same error in arresting the defendant.

## IV

It is also argued that it was error in this case to allow evidence of other crimes under the "similar acts statute", MCLA 768.27; MSA 28.1050.

Ronald Stier, manager of a supermarket, testified that defendant had robbed him at gunpoint using a distinctive weapon similar to that identified as the murder weapon. He also identified the defendant and his cofelon, the deceased Willford, without difficulty.

Ordinarily evidence that a defendant had perpetrated other criminal acts is inadmissible at trial as being collateral and because of the prejudice it brings to the minds of the jurors. *People v Schweitzer,* 23 Mich 301 (1871). From this record it is clear that the witness' identification of the accused and the weapon was sufficient to establish a connection other than one that the armed robbery of the grocery store came from defendant's propensity to commit crime. *People v Fleish,* 321 Mich 443; 32 NW2d 700 (1948).

Furthermore, witness Stier's testimony was introduced for the sole purpose of identifying the defendant as the party possessing the murder weapon. The court instructed the jury of the limited uses of such testimony under the similar acts statute. MCLA 768.27; MSA 28.1050. The evidence was material since the theory of the defense was that although defendant was present at the station, he was innocent of any criminal intent, because he didn't know that Willford would commit a robbery. *People v McPherson,* 38 Mich App 534; 197 NW2d 173 (1972). We find no error.

## V

The next issue we examine is whether the trial

court abused its discretion in allowing indorsement of a witness on the day of trial.

This case involves a second trial of the accused for murder. Defense counsel argues that to allow indorsement at this late date, after the identity of witness Stier had been known for two years, was error. The prosecutor showed no reason for failure to indorse.

We cannot agree. The defendant can complain of error only if he shows prejudicial surprise and is deprived of an opportunity to meet evidence by the court's denial of an adjournment motion or otherwise. Defense counsel did not ask for continuance or adjournment. While we have never considered this a strict requirement, lack of a request to continue or adjourn, or at least a request to interview the witness, tends to negate the argument that tardy indorsement was prejudicial. *People v Lee,* 307 Mich 743; 12 NW2d 418 (1943); *People v Hodges,* 34 Mich App 90; 190 NW2d 703 (1971). We find no abuse of discretion.

## VI

Finally, we examine the allegation that it was error to allow a witness to testify as to subsequent robberies he committed with the defendant to establish identity, possession of the murder weapon and intent.

The evidence against the accused was almost entirely circumstantial. Both those persons apparently present at the murder scene, Peck and Willford, were dead. The testimony of witness William Lillieberg, objected to at trial, was necessary to the prosecution to circumstantially identify the defendant as being at the scene of the crime and to show his purpose in being there. Furthermore, it

was important to show defendant's knowledge that Willford intended to commit the robbery and his participation as an accomplice. *People v Flansburgh,* 24 Mich App 470; 180 NW2d 373 (1970).

To show the prosecutor's assertions were true, witness Lillieberg testified that Yacks and Willford had staged another robbery in which defendant Yacks used the .25-caliber automatic and Willford used the .38 revolver. The prosecution put its circumstantial case to the jury fairly—if Yacks had used the same gun in one armed robbery and had been seen with it on several other occasions, then it might be fairly inferred that he had used the same gun to kill Peck. Thus, the evidence adduced was not used solely to show propensity to commit crime; rather it was used to show that Yacks was at least present at the scene of Peck's murder. More important, it served to show intent and negative defendant's claim that he was an innocent bystander.

Admission of such evidence was for the trial court and permissible under the statute, MCLA 768.27; MSA 28.1050. We find no error.

A review of the remainder of defendant's allegations of error indicates they are insubstantial.

Conviction affirmed.

All concurred.