543 P.2d 1129

**The STATE of Arizona, Appellee,**

v.

**Jeannie Lou RHODES, Appellant.**

**No. 2615–2.**

Supreme Court of Arizona,
In Banc.

Dec. 17, 1975.
Rehearing Denied Feb. 3, 1976.

**502**

Bruce E. Babbitt, Atty. Gen., by R. Wayne Ford, Asst. Atty. Gen., Phoenix, for appellee.

Willis & Riggs, by Blake Willis, Scottsdale, for appellant.

NABOURS, Superior Court Judge.

The defendant, Jeannie Lou Rhodes, was originally convicted of first degree murder in the death by strangulation of her mother. She was sentenced to life imprisonment. She appealed that conviction and in the case of *State v. Rhodes,* 110 Ariz. 237, 517 P.2d 507 (1974), this Court reversed and remanded the cause for a new trial as the prosecutor had made a direct comment on the defendant's failure to take the witness stand.

After a new trial was held, a jury convicted the defendant of second degree murder and she was given a sentence of thirty years to life. From that conviction and sentence this appeal was taken.

The facts, which are not greatly in dispute, show that the defendant went to the home of her mother, Lillian Barnett, the deceased victim, at approximately 8:30 o'clock P.M. on June 26, 1972. She stated that as she arrived at the front door of the house she saw the lights go off. She identified herself to her mother who opened the door and let her in. They then attempted to determine what caused the lights to go out. The power controlling the house refrigeration system was not affected as that unit continued to operate. Defendant testified that they went outside to the back of the house to find a switch box, but all they found was a box that had no fuses in it, being one that contained circuit breaker handles. They then checked the storage room for a fuse box, found none, and went back into the kitchen where they lit a candle. The deceased called her husband who was at work and he told her to check the fuse box in the hallway closet. This was done and the fuses were found to be intact. Defendant stated they then heard a noise and went to check the bedrooms. She stated that her mother indicated she saw a pick-up truck in the alley and the defendant thought she saw a figure of a person standing in the back of the lot. They returned to the kitchen, heard further noise from the bedroom area and started back to the bedroom. As they started back defendant noticed that now the front door was slightly ajar. Defendant stated that they returned to the bedroom, her mother saw what she thought was a shadow on the curtain, that she then felt something around her neck, suffered a blow to the side of the head and passed out. When she regained consciousness she saw a person attacking her mother. She tried to grab the person, saw two people leave the room and she fell to the floor unconscious. When she regained consciousness she got up, went to the living room where she closed the screen door and the front door, returned to the bedroom, sat down on the floor and cradled her mother's head in her lap.

The victim's husband testified that he received a call from his wife about 8:50 P.M. at his place of work and that she advised him that Jeannie was there and the lights were out. He did not advise her to do anything but told her he would be home shortly, as soon as he finished work at 9:00 P.M. He then stated that he left his place of work about 9:10 P.M. and that it took about 15 minutes to drive to his house. Upon arrival he tried the back door but found it locked by means of a bolt on the inside. He went to the front door and knocked but could not arouse anyone. He then went to the storage room, got a flashlight, went to the breaker box at the back of the house, turned the breakers and the house lights came on. He stated that all the switches were off, but the refrigeration is controlled by switches inside the house.

He then went to the front door and found the metal screen door locked. He pushed the screen out of the frame and unlocked the screen door. He then opened the front door which was closed but not locked, went into the house directly to the bedroom where he found the defendant and her mother on the floor. The defendant was on the floor on her stomach, his wife was on her back. The defendant rolled over and said to Mr. Barnett, her step-father, "Dick, I tried. I tried. Oh, God, I tried." He then went to the phone and called the police.

The police testified that they received a call and were dispatched to the house at approximately 9:30 P.M. The husband met them at the door and they went directly to the bedroom. The victim was on her back, her tongue protruding slightly from her mouth, cuts on her face and quite a lot of blood. Around her neck were two men's neckties which were drawn tightly. The defendant was seated beside her mother holding one of her hands. She had a man's necktie draped around her neck but not tied. At that time the victim was still alive. One officer loosened the tie or ties and had an ambulance called. The victim was removed from the scene but died on the way to the hospital.

The defendant suffered a bump on her head but no cuts. The victim was beaten severly suffering numerous cuts and bruises, black eyes and broken ribs. However, the cause of death was strangulation. The defendant had blood on her clothing, her hands, and arms and possibly her face. A pair of gloves covered with blood was found hidden in the closet and played an important roll in the evidence. The defendant's fingerprints were found on items in the bedroom and on the switch box at the back of the house.

The defendant reported that both she and her mother were assaulted by two large men over six feet in height and weighing 200 pounds or more.

Witnesses who were visiting across the street and were out front during the times involved testified that they saw no one leave the house but did see the husband when he came home.

The defendant took the stand on her own behalf and testified about the two men who she alleged made the assault and stoutly maintained her innocence.

Although no motive was ever determined, the evidence was sufficient to convince the jury of the defendant's guilt.

On appeal the appellant has raised the following nine questions, any one of which it is argued, is a sufficient reason for a reversal of the case.

*Basis of Appeal*

1. Was the verdict supported by the weight of evidence?

2. Did the state fail to disclose evidence favorable to the defense? *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

3. Was it error to declare Mr. Barnett, husband of the deceased and stepfather of the defendant, a witness of the court?

4. Were comments made by the prosecutor in closing argument prejudicial to the defendant?

5. The trial court refused to hear motions as to voluntariness of statements. Prior to the first trial such a hearing was held. On the original appeal the trial court's findings were not challenged. Did the defendant's failure to raise the issue on the original appeal preclude raising the issue upon a new trial and appeal?

6. Was there a proper foundation for admission of testimony of rebuttal witness Sharon Derringer?

7. Did the state's cross-examination of the defendant require production of a verification witness?

8. The defendant moved to prohibit the state from eliciting testimony that

she was not married to Joe Rhodes at the time of the commission of the crime. The motion was denied. Was this error as referring to prior bad acts?

9. Was the jury "tainted" because two members read a newspaper release which referred to "retrial" of defendant?

*Was The Verdict Supported by The Weight of The Evidence?*

■ This Court has taken the position that where a question is raised concerning the sufficiency of the evidence to support the verdict, it will view the evidence in the light most favorable to sustaining the verdict. *State v. Trotter,* 110 Ariz. 61, 514 P.2d 1249 (1973).

■ In this case, as in many others, there were many facts presented to the jury which might cause one person to arrive at a different conclusion from another. As we have stated, it is not the function of this Court to substitute its judgment on the facts from that of a jury unless there is a complete lack of evidence to support the facts that must be found to sustain the verdict. *State v. Bearden,* 99 Ariz. 1, 405 P.2d 885 (1965). In this case many conflicting facts were presented to the jury, but there were sufficient facts that when found to exist by the jury would sustain the verdict. A review of the entire transcript of the trial of this case leads the Court to the conclusion that while the evidence may hang in delicate balance there is sufficient evidence to support the verdict.

*Brady Materials*

The defendant has made the broad assertion that the state suppressed evidence which might be material either to the guilt or innocence of the defendant in contravention of the principles pronounced in the cases of *Brady v. State of Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Hibler,* 463 F.2d 455 (9th Cir. 1972), and *State v. Fowler,* 101 Ariz. 561, 422 P.2d 125 (1967). In

support of her argument she has presented a number of examples divided into two categories, one designated as "Failure to Investigate Adequately" and the other where the state failed to make evidence available at a particular time although it was ultimately supplied, or witnesses were endorsed and not called and in one instance the whereabouts of a witness was not revealed.

■ First, upon the matters entitled "Failure to Investigate Adequately," we do not believe that a failure, alone, to conduct some investigation in relation to the incident in question necessarily gives rise to the principles referred to by the so-called "Brady Materials." The defendant complains that one police officer failed to prepare his report until some six weeks after the incident; that the fingerprint people did not attempt to take fingerprints from certain areas or items; that the reason given by the officers for failing to make some investigation was illogical; that the conclusions reached by the officers in their investigation were illogical; that some matters that the defense felt were important were given no importance by the investigators. All of these items are outside of the requirements and beyond the intendments of the *Brady* case. None of these items constitute the withholding of evidence that would either be favorable to an accused or material to his guilt or punishment. Failure to investigate without further evidence of materiality to the guilt or innocence of the defendant constitutes no error. A requirement that foresight must equal hindsight would place the state in criminal cases in an impossible position.

■ The one point of importance raised by the defendant in this general question is whether there was prejudicial error in the failure or refusal of the state to supply the defendant with the address or location of the witness Jackson. The state advised the court and the defendant that they had interviewed a witness by the name of Jackson who had had conversations with the defendant subsequent to the commission of

the offense. This witness was not present at the incident and had no personal knowledge of any facts. She was merely an acquaintance made by the defendant after her first trial and conviction. The state refused to supply the information to the defendant for two reasons. First, the prosecutor stated that he would not supply any information related by the witness until she had taken and passed a polygraph examination, as the state was not satisfied with her truthfulness. Second, the prosecutor stated that the witness had expressed a desire not to talk to the defendant or her counsel. A review of the transcript reveals that the only testimony that might be given by the witness Jackson was a denial that in her presence the defendant had ever made any admission concerning the incident. The state never called the witness to attend the trial and made no attempt to use her or her testimony in any manner. Therefore, there has been nothing presented that would show any violation of the principles set forth in *Brady*. There has been no showing of any possible prejudice to the defendant.

*Making A Witness The Court's Witness*

In a pre-trial motion, the prosecutor sought to have Richard Barnett, defendant's stepfather, declared a hostile witness or as the court's witness. It was stipulated at that time that the witness was not a suspect. The court found that the witness had done nothing at that time that would allow the court to declare him a hostile witness. The prosecutor asked to have the court call Mr. Barnett as the court's witness in order that the prosecutor would not have to vouch for his testimony and to be allowed to cross-examine the witness. The court agreed. The record discloses that prior to this ruling the witness, in the presence and with the advice of his attorney, refused to answer any questions on the grounds that he might incriminate himself. Later he was called as a witness during the trial and upon his refusal to answer was granted immunity. He then testified.

The defendant urges that this also was prejudicial error.

There is no question that a court may call its own witnesses in the interest of justice. As stated in Udall, Arizona Law of Evidence, § 3, page 6:

"In both civil and criminal cases, all parties have the right to call witnesses and the court has no positive duty to require the prosecuting attorney to call all the eyewitnesses to a crime or incident.

"But the trial judge has a right in his discretion, on the suggestion of either party, to call as the Court's witness any person having knowledge of the facts. This practice is occasionally used in a situation where a party does not wish to be bound by the testimony of a hostile witness and, therefore, cannot call him. * * * It is generally agreed however, that the calling of the court's witnesses is a discretionary right * * *.

This Court has affirmed this power in the case of *State v. Guthrie*, 108 Ariz. 280, 496 P.2d 580, cert. denied 409 U.S. 878, 93 S. Ct. 131, 34 L.Ed.2d 132 (1972).

As we recently stated in *State v. Ferrari*, 112 Ariz. 324, 541 P.2d 921 (filed October 23, 1975):

"In *United States v. Wilson*, 447 F.2d 1, (9th Cir. 1971), the court held it was not an abuse of discretion for the trial court to call as its own witness one who had been implicated in the crime. The court held it was within the discretion of the trial court, and a showing of prejudice resulting from an abuse of the discretion must be established in order to reverse the conviction.

\*  \*  \*  \*  \*  \*

"This Court has never adopted the rule noted in the Illinois cases cited by appellant requiring a showing that a material injustice would result unless the court called the witness. The calling of witnesses by the court, whether eye-witnesses or otherwise, is within the sound discretion of the trial court and will not be

grounds for reversal unless it is established that the trial court abused its discretion and prejudice to the defendant resulted therefrom."

In Anno. 67 A.L.R.2d 538, 540, it was stated:

"The authority of a trial judge to call a witness in a criminal prosecution as the court's witness on its own motion or at the request of one of the parties has been recognized in all jurisdictions in which the question has been considered."

An analysis of the proceedings in this case reveals no abuse of discretion on the part of the trial judge. The fact that the witness invoked the 5th Amendment and was granted immunity does not show any resulting prejudice to the defendant any more than to the state.

### The Prosecutor's Closing Argument

■ Counsel for defendant contends that the case should be reversed because of the final comments of the prosecutor in argument when he referred to a conversation he had with a witness, a rebuttal witness, at the Arizona State Prison. Defendant contends that this insinuated that she had been previously convicted and incarcerated at the State Prison. An objection was made by the defendant at the time upon the grounds that there was no evidence as to where the conversation took place. The objection in effect was sustained by the court complying with the request of the defendant that the remark be stricken and the jury instructed to disregard it. The court stating, "Yes, it may be stricken."

A review of the transcript shows that there was never a comment made or a question asked that directly or indirectly placed the defendant in the Arizona State Prison. There was no testimony offered showing where any of the conversations between the witness and the defendant took place, only where counsel for the state and the defendant interviewed the witness. The fact that the witness was in the Arizona State Prison had been brought out during the questioning of the witness

in several ways, but directly on one occasion when the prosecutor asked the witness, "Did I ever at the Arizona State Prison indicate to you * * *." To this question there was no objection made by the defense on the grounds that there was error committed by showing that the witness was at the prison. The jury having heard, during the questioning of the witness, that the witness was at the prison makes it very unlikely that hearing the same thing again in argument of counsel would cause prejudice to the defendant. There was no referral made to any prior conviction or a former verdict. The record is replete with questions by both the prosecutor and defense counsel to "prior hearings" and "prior testimony," but both carefully avoided any reference to a prior conviction or sentence. There being absolutely no prejudice shown, there is no grounds for reversal upon this basis.

### Denial of Pre-Trial Voluntariness Hearings

■ Prior to the trial counsel for the defendant sought to have hearings conducted by the trial judge on the question of whether certain statements made by the defendant were voluntary and admissible as required by *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The Court ruled that those matters had been presented and ruled upon by the trial judge prior to the first trial and could not be raised again prior to the new trial. The state further points out that on the appeal of the first conviction no question was raised by the defendant as to the trial court's decision in relation to the rulings made upon the pre-trial voluntariness questions. The defendant is therefore precluded from raising them on this appeal.

In the case of *People v. Yacks*, 49 Mich.App. 444, 447, 212 N.W.2d 249, 252 (1973), the court stated:

"* * * In its review of the first *Yacks* trial, the Court of Appeals found that a statement made by the accused to Flint Police Department detectives was

indeed voluntary. (citation omitted) The trial judge in the second trial was thus bound by that determination."

While in this case that point was not raised and therefore could not be ruled upon in the first appeal, our State Supreme Court has said:

" * * * As was said by this court in *Arizona-Parral Min. Co. v. Forbes*, 16 Ariz. 395, 146 P. 504, 506, quoting from *Ohio Valley Trust Co. v. Wernke*, 179 Ind. 49, 99 N.E. 734: ' "As was said in the case last cited [*Stevens v. Templeton*, 174 Ind. 129, 91 N.E. 563], appeals cannot be allowed by piecemeal. There must be an end to them as speedily as the contention of litigants may be advanced and decided. So it is that all questions for review by an Appellate Court must be presented on the first appeal thereafter from a final judgment, or not at all; for thereafter all questions presented by the record will be considered as finally determined and all such questions not expressly affirmed or reversed will, by implication, be deemed affirmed." ' * * *" *Paramount Pictures Inc. v. Holmes*, 58 Ariz. 1, 4, 117 P.2d 90, 91 (1941).

As pointed out by the defendant, this Court has, in the case of *State v. Armstrong*, 103 Ariz. 174, 438 P.2d 411 (1968), vacated on other grounds 103 Ariz. 280, 440 P.2d 307 (1968), ruled that even though the admissibility of an item is not challenged during trial or on presentation of a motion for new trial nevertheless where the challenged item has the status of an admission or confession the court will remand for a voluntariness hearing. A careful review of the transcript of the trial of this case discloses no confession or admissions of the defendant. The only question raised by the defendant relating to any questioning prior to the giving of the *Miranda* warning and after the accusatory stage of the proceedings when the investigation was pointing to the defendant was in relation to the gloves that had been found, one on the closet floor and the oth-er stuffed into the sleeve of a dress hanging in the closet. The state did not ask any witness any questions pertaining to the gloves that was the result of any conversation with the defendant held after it was decided that she was a suspect and prior to the *Miranda* warning. Defense counsel pointed out, in the absence of the jury, that at the first trial the trial judge had ruled that the state could not bring out that the officer had shown her the gloves and her stating that she knew nothing about them. Defense counsel in his cross-examination of a police officer brought out the fact that the gloves had been displayed to the defendant and that she had denied ever seeing the gloves prior to that moment before she was actually placed under arrest and her rights given to her. Counsel was allowed to develop fully his request that he be allowed to question the officer in detail relating to the gloves, and the failure to give the *Miranda* warning prior to the question in order to show his hostility, bias and prejudice to the jury.

The defendant having denied any knowledge of the gloves in response to any question by a police officer and having taken the witness stand and again denied such knowledge, we see no reason to remand the case for the purpose of conducting any hearing as to voluntariness. An approved instruction cautioning the jury as to any statements given by the defendant was a part of the instructions given to the jury by the trial court at the conclusion of the trial, this instruction going to any statement made by the defendant to any officer before being advised as to her rights. We see no prejudicial error on this point.

*Testimony of Rebuttal Witness*

Defendant raises the question that the court committed error in allowing the state to call as a rebuttal witness one Sharon Derringer who was an inmate at the Arizona State Prison and talked with the defendant on several occasions. The objection was made that no foundation was laid which would allow the testimony and that

the defendant was prejudiced by the fact that a jail matron was in the courtroom in charge of the witness.

Taking up the last question first, the defendant has cited no authority in support of this allegation. It is obvious from the testimony of the witness that she was in prison, that she had been convicted of a felony and had been sentenced, therefore, we see no prejudice in the fact that as a prisoner she was in custody and her guard was allowed to accompany her to the courtroom.

A review of the transcript of the testimony at the trial reveals that the state had asked the defendant questions concerning her living with her present husband for some time prior to their marriage and her mother's (the victim's) feelings in this regard. The questions asked of the rebuttal witness were upon this subject and were for the purpose of contradicting the answers given by the defendant to the prosecutor by showing contrary statements having been made to the witness. This is sufficient foundation and was well within the discretion of the trial judge to allow such testimony. McCormick points out that:

> "When a witness has testified to facts material in the case, it is provable by way of impeachment that he has previously made statements relating to these same facts which are inconsistent with his present testimony. The making of these previous statements may be drawn out in cross-examination of the witness himself, or if on such cross-examination the witness has denied making the statement, or has failed to remember it, the making of the statement may be proved by another witness." (footnotes omitted) McCormick on Evidence, 1954, Chapter 5, p. 63.

*Did The State's Cross-examination Of The Defendant Require Production Of A Verification Witness?*

A review of the transcript requires us to answer this question, "No."

The questions asked relating to conversations with a witness who was not then called were in no way prejudicial to the defendant. They did not involve any insinuations relating to prior convictions, other crimes, prior bad acts or any other prejudicial matter. The answers given were clear and unambiguous and where there was any possibility of being detrimental to the state they were unimpeached and therefore constituted unrefuted testimony before the jury. There being absolutely no prejudice shown by the questions asked or the answers given, no error has been committed.

*Denial Of Defendant's Motion In Limine To Prohibit State From Soliciting Testimony As To Defendant's Marital Status*

The defendant has raised the question that prejudicial error was committed by the trial court by reason of its ruling denying the defendant's motion to prohibit the state from going into the question of the defendant's marital status to her present husband. It appears that the defendant and her husband had lived together for some period of time prior to the death of the defendant's mother without benefit of matrimony. The only reference to this matter was whether or not the deceased was aware of the situation, if it was against her approval and did it, therefore, cause some dissension between the defendant and her mother. A review of all the testimony fails to show any prejudice by reason of any questions asked in relation to this subject. There was testimony that would be resolved by the triers of fact as to whether this situation did cause any dissension between the parties. The matter was not presented in any manner that would infer to the jury that the defendant had committed a crime or in any way characterized the relationship as "other bad acts" as that term has been used in the criminal law. We find no support for this objection and the defendant has cited no authorities in support thereof.

*Was The Jury "Tainted" Because Two Members Read A Newspaper Item Which Referred To A "Retrial" Of The Defendant?*

After the jury had been selected on a Friday and before the trial commenced on Monday, the jurors were allowed to go home. On Friday evening a local newspaper ran an article headlined "Woman's Retrial in Slaying to Get Under Way Monday." The body of the article stated that the jury had been selected and who the presiding judge would be. No mention was made of a prior conviction. On Monday, prior to beginning the trial, the jurors were brought in individually before the court and counsel and asked about the article and if they had seen and read it. Only two jurors indicated they had ever seen the article and both testified that as soon as they saw it related to the case that was to be tried, they put it aside. Both jurors testified that it meant nothing to them, they assumed nothing from the article other than the trial was to start. They both indicated no bias or prejudice because of the article and that they would both be fair and impartial in the trial of the case.

In view of the references made during the trial to former testimony and former hearings as heretofore covered in this opinion, we find nothing that would justify the court in assuming that the jurors were in any way prejudiced or "tainted." Where jurors upon being questioned admit they have read and remembered an article pertaining to the case but state that they have not formed an opinion as to guilt or innocence of the defendant, it has been held that a failure to strike such jurors for cause is not an abuse of the court's discretion. *State v. Hall*, 18 Ariz. App. 593, 504 P.2d 534 (1972). The same logic is applicable to the question presented in this case.

The judgment of the trial court is affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., HAYS, J., and SANDRA D. O'CONNOR, Superior Court Judge, concur.

Note: Justices LORNA E. LOCKWOOD and WILLIAM A. HOLOHAN did not participate in the determination of this matter and Judges WILLIAM W. NABOURS and SANDRA D. O'CONNOR were called to sit in their stead.