555 P.2d 120

**STATE of Arizona, Appellee,**

v.

**Emmett LAJEUNESSE, Appellant.**

**No. I CA–CR 1467.**

Court of Appeals of Arizona,
Division 1,
Department B.

Aug. 17, 1976.

Rehearing Denied Sept. 22, 1976.

Petition for Review Denied Oct. 13, 1976.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Teresa S. Thayer, Asst. Attys. Gen., Phoenix, for appellee.

George M. Sterling, Jr., Phoenix, for appellant.

## OPINION

JACOBSON, Presiding Judge.

After a trial by jury, appellant was found guilty of manslaughter while driving a motor vehicle, a misdemeanor, and was placed on probation for one year. On appeal, he raises three issues.

1.  Whether paint samples taken from appellant's car while it was in a towing company parking lot violated his Fourth and Fourteenth Amendment rights and made the evidence seized inadmissible.

2.  Whether the complaint against appellant should be dismissed because the police officers who investigated the accident did not obtain the name of a witness.

3.  Whether the trial court improperly permitted a police officer to testify as an accident reconstruction expert when the witness was not qualified by training or experience as an expert and whose opinion was based upon assumptions not supported by the evidence.

As to the first issue, appellant's car was severely damaged in the accident, and was taken to a private company's storage yard. The next day a Phoenix police officer entered the yard and removed a small quantity of paint samples from the exterior of

the vehicle. Appellant moved to suppress the admissibility of the paint samples on the grounds that they were seized in violation of his fourth and fourteenth amendment rights. His motion was denied by the trial court. Appellant does not contend that there was not probable cause for the police to take the paint samples nor that the towing of his automobile to the storage yard was improper. Rather, he contends only that the police were required to obtain a search warrant before removing the paint samples, asserting that because the police officers had ample opportunity to obtain a warrant, any evidence obtained without the warrant is inadmissible.

In deciding this issue, we are persuaded by the plurality opinion of the United States Supreme Court in *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). Unfortunately, because neither party has cited *Cardwell* in its brief, we do not have the benefit of counsels' argument on the issue. However, because of the similarity of the facts between this case and *Cardwell,* we feel that *Cardwell* is helpful in our disposition of this matter.

In *Cardwell,* the defendant was arrested for murder. The police had probable cause to believe that his car had been used in the crime. After his arrest, the police towed his car from a commercial parking lot to the police impoundment lot. The next day a police technician made a plaster cast of the tread of the automobile's right rear tire and removed paint samples from the car. At trial, the technician testified that the cast taken from appellant's car matched a cast of a tire impression found at the scene of the crime and the foreign paint samples found on the victim's car were not different from those taken from the defendant's car.

In a habeas corpus petition, appellant contended that the "search" of the car and the seizure of his automobile by the police violated his fourth and fourteenth amendment rights. The federal district court granted his petition and the Sixth Circuit affirmed. On certiorari, the United States Supreme Court reversed the district court and the circuit court. The court was split three ways in its decision. Four members of the Court (Chief Justice Berger and Justices Blackmun, White and Rehnquist) felt that the removal of the paint samples and seizure of the automobile were reasonable and also that the testimony of the police technician was admissible. Justice Powell concurred in the result on the grounds that "federal collateral review of a State prisoner's Fourth Amendment claims—claims which rarely bear on innocence—should be confined solely to the question of whether the petitioner [for habeas corpus] was provided a fair opportunity to raise and have adjudicated the question in the state courts." 417 U.S. at 596, 94 S.Ct. at 2472. Justice Powell concluded that because there was no such contention in *Cardwell,* the conviction of the defendant should be affirmed.

The remaining four Justices (Stewart, Douglas, Brennan and Marshall) dissented on the grounds that the initial towing of the automobile was an unreasonable seizure. Those Justices did not discuss the issue of whether the taking of the cast of the rear tire and the removal of the paint samples were improper.

■ The plurality opinion correctly concluded that the primary objective of the fourth amendment is the protection of privacy, not the protection of property rights. The court stated "The decisions of this Court have time and again underscored the essential purpose of the Fourth Amendment to shield the citizen from unwarranted intrusions into his privacy." 417 U.S. at 589, 94 S.Ct. at 2469, quoting *Jones v. United States,* 357 U.S. 493, 498, 78 S.Ct. 1253, 1256, 2 L.Ed.2d 1514 (1958).

Using this underlying principle, the court reasoned as follows:

" 'The search of an automobile is far less intrusive on the rights protected by the Fourth Amendment than the search of one's person or of a building.' *Almeida-Sanchez v. United States,* 413 U.S. 266, 279, 93 S.Ct. 2535, 2542, 37 L.Ed.2d 596

(1973) (Powell, J., concurring). One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where its occupants and its contents are in plain view. See *People v. Case*, 220 Mich. 379, 388–389, 190 N.W. 289, 292 (1922). 'What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.' *Katz v. United States*, 389 U.S. 347 at 351, 88 S.Ct. 507 at 511, 19 L.Ed.2d 576; *United States v. Dionisio*, 410 U.S. 1 at 14, 93 S.Ct. 764 at 771, 35 L.Ed.2d 67. This is not to say that no part of the interior of an automobile has Fourth Amendment protection; the exercise of a desire to be mobile does not, of course, waive one's right to be free of unreasonable government intrusion. But insofar as Fourth Amendment protection extends to a motor vehicle, it is the right to privacy that is the touchstone for our inquiry.

"In the present case, nothing from the interior of the car and no personal effects which the Fourth Amendment traditionally has been deemed to protect, were searched or seized and introduced in evidence. With the 'search' limited to the examination of the tire on the wheel and the taking of paint scrapings from the exterior of the vehicle left in the public parking lot, we fail to comprehend what expectation of privacy was infringed. Stated simply, the invasion of privacy, 'if it can be said to exist, is abstract and theoretical.' *Air Polution Variance Board v. Western Alfalfa Corp.*, 416 U.S. 861, 865, 94 S.Ct. 2114, 2116, 40 L.Ed.2d 607 (1974). Under circumstances such as these, where probable cause exists, a warrantless examination of the exterior of a car is not unreasonable under the Fourth and Fourteenth Amendments.

[footnotes deleted].[1] 417 U.S. at 590–592, 94 S.Ct. at 2469–2470."

The plurality opinion distinguished *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) on the grounds that "*Coolidge* concerned a thorough and extensive search of the entire automobile including the interior . . . . A search of that kind raises different and additional considerations not present in the examination of a tire on an operative wheel and in the taking of exterior paint samples from the vehicle in the present case for which there was no reasonable expectation of privacy." 417 U.S. at 593, fn. 9, 94 S.Ct. at 2471. The court also distinguished *Coolidge* on the grounds that in *Coolidge*, the car was parked on the defendant's driveway and the seizure of the automobile required an entry upon private property. In *Cardwell*, as in the current case, the automobile was seized from a public place where access was not meaningfully restricted.

■ Further, the facts in the current case are more favorable to the state's position than the facts in *Cardwell*. In *Cardwell*, the police towed the car from private property to the police impoundment yard for the purpose of conducting the examinations. In the current case, appellant does not contend (as did the defendant in *Cardwell*) that the initial towing of the car was improper or that the police did not have the right to enter the towing company's yard. Unlike the defendant in *Cardwell*, the sole search and seizure objected to by appellant in the current case is the removal of the paint samples. In light of the reasoning of *Cardwell*, we hold that the "search" conducted in the current case was not unreasonable and was not a violation of appellant's fourth and fourteenth amendment rights.

■ Appellant's second ground on appeal is that the police did not obtain the names and addresses of two alleged eyewitnesses to the accident. Appellant contends that failure of the police to obtain this in-

1. For a critique of the plurality opinion, see Note, 28 Rutgers L.Rev. 766 (1975).

formation was a violation of the rule set forth in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

One of the victims of the accident, Mr. Schaffer, testified that he conversed with an individual in a white uniform shortly after the accident. This man told him that an orange van came through the intersection and caused the accident instead of appellant. Mr. Schaffer also testified that another man told him that he pursued the van and obtained its license plate number. However, the police did not obtain the name of either witness nor obtain a statement from either one. Neither witness could be located after the day of the accident.

There is no showing that police spoke with the second witness or that they were aware of his existence during their investigation at the scene of the accident. As to the first witness, the police spoke with a man matching his description, but this gentleman would not say anything about the accident and was belligerent. One police officer testified that the potential witness "didn't know why we were bothering him." There is no indication that the police knew or had reason to know that the witness could give any exculpatory testimony. Accordingly, *Brady* does not apply to the current case. In *State v. Turrubiates,* 25 Ariz. App. 234, 542 P.2d 427 (1975), the court stated:

"If exculpating evidence comes to their [the police] attention during the investigation, *Brady* requires the prosecutor to furnish defense counsel with its substance. Beyond this, *Brady* does not go." 25 Ariz.App. at 240, 542 P.2d at 433.

The rule as to the scope of investigation necessary was set forth by our Supreme Court in *State v. Rhodes,* 112 Ariz. 500, 543 P.2d 1129 (1975). In *Rhodes,* the court stated:

"Failure to investigate without further evidence of materiality to the guilt or innocence of the defendant constitutes no error. A requirement that foresight must

equal hindsight would place the state in criminal cases in an impossible position." 112 Ariz. at 504, 543 P.2d at 1133.

*See also, City of Kettering v. Baker,* 42 Ohio St.2d 351, 328 N.E.2d 805 (1975).

In the current case, there is no showing that the police knew or had reason to know that the witnesses had any material evidence. In fact, the primary witness stated that he did not know why the police were bothering with him. Thus there is no showing that the police intentionally failed to gather information.

Appellant's final ground of appeal is properly divided into two sections. First, whether the state's expert witness on "accident reconstruction" was properly qualified. Second, whether the expert's opinion was based on assumptions which were contradicted by the evidence.

As to the first issue, it is well established that the competency of an expert is a matter resting in the sound discretion of the trial court and appellate review is limited to the abuse of such discretion. *Hinson v. Phoenix Pie Company,* 3 Ariz. App. 523, 416 P.2d 202 (1966); *Gray v. Woods,* 84 Ariz. 87, 324 P.2d 220 (1958).

The general rule as to accident reconstruction experts has been stated by Udall as follows:

"A properly qualified expert who did not witness the accident has been permitted to give his opinion as to the speed of an automobile based on skidmarks, damage to the vehicles, injuries and other effects of a collision. But so many variables are involved in trying to reconstruct an accident that the court should carefully scrutinize the qualifications and the information of a non-eyewitness expert who undertakes to offer opinions beyond those involving speed, skidmarks and point of impact." Udall, Arizona Law of Evidence, § 21 at 37–38 (1960).

Udall further cautions that:

"The ordinary highway patrolman has not the background in physics, mathe-

matics, etc. to reconstruct an accident solely on skidmarks, physical damage, and the like." Udall, *supra*, at 38, fn. 31.

Therefore, in determining whether the state's expert was qualified as an expert witness, we need to consider both his qualifications and the subject matter of his testimony.

First, the state's expert, Sergeant King, was a supervisor in the hit and run division of the Phoenix Police Department and had served in that position for four years. During that time, he had been responsible for the investigation of over 500 fatal accidents. In addition to on-the-job training under ex-Lt. Lowell Hicks, Sergeant King had taken classes in accident reconstruction at Phoenix College and the Northwestern Traffic Institute. Sergeant King further testified that he kept current in the accident investigation field and participated in training on a specially designed testing vehicle. Sergeant King had previously testified in superior court as an accident reconstruction expert.

█ In considering the general standards for expert testimony our Supreme Court has defined an expert as follows:

> "An expert is one whose opinions depend upon special knowledge with which he can assist the jury. *Board of Regents v. Cannon* [86 Ariz. 176, 342 P.2d 207 (1959)]. He need not be a professional, but may be a lay person who has special knowledge superior to men in general through actual experience or careful study. *Board of Regents v. Cannon, supra.* He need not have the highest degree of skill or knowledge, but that lack of degree goes to the weight of his testimony before the trier of fact and not to admissibility. *City of Phoenix v. Brown,* 88 Ariz. 60, 352 P.2d 754 (1960); Udall, Arizona Law of Evidence, § 23. *State v. Macumber,* 112 Ariz. 569, 570, 544 P.2d 1084, 1085 (1976).

In light of the foregoing test, we hold that the trial court could have determined that Sergeant King had more knowledge than the ordinary layman as to accident recon-

struction and could qualify as an expert as to certain matters regarding accident reconstruction.

Having considered Sergeant King's areas of expertise, we turn to the nature of his testimony. In this regard, the trial court wisely conducted a hearing outside of the presence of the jury in order to determine the nature and the basis of Sergeant King's testimony. On the basis of this hearing, the court determined that Sergeant King could testify as to his conclusions as an expert witness.

█ The appellant contends that Sergeant King's assumptions upon which he based his expert opinion were not supported by the evidence and points to seven alleged discrepancies between the "facts" as viewed by the appellant and King's testimony. It would unduly lengthen this opinion to individually discuss each of these alleged discrepancies. Suffice it to say that these "facts" were either not relied upon by Sergeant King in reaching his opinion, or were immaterial to his opinion, or were legitimately contested "facts" and evidence existed which supported King's version. We find that the trial court properly admitted Sergeant King's testimony, leaving to the jury the weight to be afforded that testimony.

Judgment and sentence are affirmed.

WREN, J., concurring.

SCHROEDER, Judge (specially concurring):

Since it is undisputed that the police lawfully caused the damaged car to be towed from an intersection after an accident, I agree with the majority that the subsequent chipping of paint samples did not require a warrant. However, I cannot subscribe to the majority's approval of the plurality opinion in *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), in reaching this result. The exigencies surrounding the towing in this case were not present in *Cardwell,* where the police had towed the car from a public parking lot, not

from an accident scene. The eight justices who considered whether there had been an unlawful seizure were evenly divided. For the reasons well stated by Justice Stewart's dissenting opinion in *Cardwell,* I am unable to join in the majority's view that a warrant would not be required in circumstances other than those presented here.