NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JASON ROBERT O'NEILL, *Appellant.*

No. 1 CA-CR 14-0514
FILED 4-16-2015

Appeal from the Superior Court in Maricopa County
No. CR2013-449074-001
The Honorable Lisa Andrus, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Paul J. Prato
*Counsel for Appellant*

Jason Robert O'Neill, Florence
*Appellant*

---

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Patricia K. Norris joined.

---

H O W E, Judge:

¶1        This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). Counsel for Jason O'Neill asks this Court to search the record for fundamental error. O'Neill has filed a supplemental brief in propria persona, which we have considered. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining O'Neill's conviction and resolve all reasonable inferences against him. *State v. Fontes*, 195 Ariz. 229, 230 ¶ 2, 986 P.2d 897, 898 (App. 1998).

¶3        Ruben L.[1] returned home and saw that his front gate was propped open with a suitcase. He heard sounds coming from his laundry room. Ruben opened the door and saw O'Neill holding one of his blue bags. O'Neill immediately threw the bag into the washing machine. Ruben asked O'Neill why he was in his house, and O'Neill said that he thought it was an empty apartment. Ruben then asked how it could be empty when stuff was everywhere. After arguing, O'Neill walked away and grabbed the suitcase at the gate, took a bottle out, and drank from it. Ruben called the police and followed O'Neill into the street, updating the police operator as he walked.

¶4        Soon after, O'Neill sat at a bus stop, and police officers approached him. Officer Chris Lentine arrived and took charge of the investigation. He spoke to Ruben, who identified O'Neill as the man who entered his home. He then spoke to O'Neill. O'Neill said that he needed to go to urgent care. But Officer Lentine did not observe anything about O'Neill that prompted the officer to get him medical attention. The officer looked in O'Neill's suitcase, but found no "[e]vidence of a crime," so he placed it in "safekeeping."

---

[1] We use the victim's first name to protect his privacy. *State v. Maldonado*, 206 Ariz. 339, 341 ¶ 2 n.1, 78 P.3d 1060, 1062 n.1 (App. 2003).

¶5        While other officers detained O'Neill at the bus stop, Officer Lentine drove to Ruben's condo, which looked "like a residential structure, like an adobe type style . . . . [with] several units connected together." In the laundry room, he saw a washer, dryer, shelves, and miscellaneous items. Inside the washer was a blue bag that contained power tools and a battery or charger. On the washer was a drill bit set.

¶6        After examining the scene, Officer Lentine returned to the bus stop. He read O'Neill his *Miranda*[2] rights, and O'Neill agreed to answer questions. O'Neill told the officer that he came to Mesa the previous night because he had a job interview that day. O'Neill explained that he was going to take the bus, but he did not have money. When asked whether he had gone into Ruben's home, he said that he thought it was an urgent care facility. Once he realized it was a residence, however, he decided to take the tools. He was going to either pawn or sell them for money.

¶7        O'Neill was arrested and charged with one count of burglary in the second degree. The State filed four sentencing enhancement allegations. At trial, Ruben and Officer Lentine testified, and Ruben made an in-court identification of O'Neill. After the State rested its case-in-chief, defense counsel moved for judgment of acquittal pursuant to Arizona Rule of Criminal Procedure 20, arguing that substantial evidence did not exist to go to the jury. Finding otherwise, the court denied the motion. O'Neill did not testify. The jury found O'Neill guilty as charged.

¶8        The trial court conducted the sentencing hearing in compliance with O'Neill's constitutional rights and Arizona Rule of Criminal Procedure 26. The court found that the State had shown by clear and convincing evidence that O'Neill had two allegeable prior convictions. It sentenced O'Neill to the presumptive 11.25 years' imprisonment, with 289 days of presentence incarceration credit. O'Neill timely appealed.

## DISCUSSION

¶9        Counsel for O'Neill has advised this Court that after a diligent search of the entire record, he has found no arguable question of law. But O'Neill has filed a supplemental brief raising 14 issues, which we have considered. Because O'Neill failed to raise these issues at trial, we review them only for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567 ¶¶ 19–20, 115 P.3d 601, 607 (2005).

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶10        O'Neill primarily argues that the evidence was insufficient to support his conviction because the State presented no physical evidence linking him to the offense, he did not enter a residence, and he did not have the requisite intent when he entered. We review de novo the sufficiency of evidence to support a conviction. *State v. West*, 226 Ariz. 559, 562 ¶ 15, 250 P.3d 1188, 1191 (2011). Contrary to O'Neill's argument, the State did not need to present "physical evidence" linking him to the theft. As the trial court instructed the jury: "The State must prove guilt beyond a reasonable doubt based on the evidence. . . . Evidence may be direct or circumstantial. Direct evidence is the testimony of a witness. . . . Circumstantial evidence is the proof of a fact or facts from which you may find another fact." "Arizona law makes no distinction between circumstantial and direct evidence." *State v. Stuard*, 176 Ariz. 589, 603, 863 P.2d 881, 895 (1993).

¶11        Sufficient evidence supports O'Neill's conviction. A person commits burglary in the second degree by (1) "entering or remaining unlawfully in or on a residential structure" and (2) "with the intent to commit any theft or any felony therein." A.R.S. § 13–1507(A). The record shows that Ruben's condo was a residential structure. It also shows that when Ruben returned home, O'Neill was standing in his laundry room. Ruben did not know O'Neill, nor did he give him permission to enter his residence. The record further shows that although O'Neill first thought that the home was an urgent care facility, after he realized it was a residence, he decided to stay. Moreover, O'Neill decided to take Ruben's tools and pawn them for money—as he told Officer Lentine—thereby developing the necessary intent. *See State v. Altamirano*, 166 Ariz. 432, 435, 803 P.2d 425, 428 (App. 1990) ("When a person's intent in remaining on premises is for the purpose of committing a theft or some felony therein, such individual is no more welcome than one who initially entered with such intent."). Consequently, sufficient evidence supports O'Neill's conviction.

¶12        O'Neill next contends that a prospective juror improperly commented on his decision not to testify by answering defense counsel's questions during voir dire about a defendant's decision not to testify. "To be constitutionally proscribed, a comment must be adverse; that is, it must support an unfavorable inference against the defendant and, therefore, operate as a penalty imposed for exercising a constitutional privilege." *State v. Ramos*, 235 Ariz. 230, 235 ¶ 13, 330 P.3d 987, 992 (App. 2014) (quoting *State v. Mata*, 125 Ariz. 233, 238, 609 P.2d 48, 53 (1980)). Contrary to O'Neill's contention, the prospective juror did not comment on O'Neill's decision not to testify; instead, he was answering defense counsel's questions about a hypothetical defendant not testifying. At that point in the trial, the prospective juror had no knowledge that O'Neill would not testify.

**¶13**          O'Neill also argues that his voluntary intoxication should have been considered in determining intent and that he was unable to appreciate the wrongfulness of his action because of the side effects from his medicines. The jurors in fact did consider his voluntary intoxication due to alcohol and drugs in determining his mental state. The jury instruction provided that the jurors "may take into consideration the fact that the accused was intoxicated at the time [of committing the offense] in determining the culpable mental state with which he committed the act." Intoxication is "any mental or physical incapacity resulting from use of drugs, toxic vapors or intoxicating liquors."

**¶14**          O'Neill further contends that he was prejudiced by admission of Ruben's alleged inconsistent statements and of Officer Lentine's alleged inconsistent statements and paraphrases of O'Neill's statements. O'Neill has not demonstrated how the statements prejudiced his case, however. *See State v. Parker*, 22 Ariz. App. 111, 116, 524 P.2d 506, 511 (1974) (providing that a mere claim of prejudice is not enough to meet a showing of prejudice requiring reversal). Further, inconsistency and paraphrasing is not necessarily false or perjured, and witness credibility is for jurors, not the court, to determine. *State v. Williams*, 209 Ariz. 228, 231 ¶ 6, 99 P.3d 43, 46 (App. 2004).

**¶15**          O'Neill also argues that the State violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose exculpatory evidence. But O'Neill has waived this argument because he does not identify the evidence the State allegedly withheld, nor does the record indicate that the State withheld evidence. *See State v. Bolton*, 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995) (providing that insufficient argument on appeal waives claim).

**¶16**          O'Neill next contends that his *Miranda* rights were violated during his initial encounter with the officers. *See Miranda*, 384 U.S. at 436. But this argument fails because O'Neill was in investigative detention, which does not implicate *Miranda*. *See Berkemer v. McCarty*, 468 U.S. 420, 439–40 (1984) ("The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of Miranda."); *State v. Spreitz*, 190 Ariz. 129, 143–44, 945 P.2d 1260, 1274–75 (1997) (relying in part on *Berkemer* to conclude that investigative traffic stop not subject to *Miranda*).

**¶17**          O'Neill further argues that the State failed to introduce evidence that would have proved him innocent, specifically, that he was not a "homeless, penniless and a vagabond" and that his suitcase contained

evidence to support his interview story. But the State has no obligation to offer any particular type of evidence at trial. *See, e.g.*, *State v. Rhodes*, 112 Ariz. 500, 504, 543 P.2d 1129, 1133 (1975) (explaining that the fact that the "fingerprint people did not attempt to take fingerprints from certain areas or items" constituted no error).

**¶18** O'Neill contends finally that his prior felony convictions were non-violent, that the trial court should have considered his interview story in evaluating his pecuniary value, and that Ruben suffered no harm from his action. We summarily reject these claims because they have no legal basis or are based on a misapprehension of the applicable law.

**¶19** We have read and considered counsel's brief and fully reviewed the record for reversible error. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. We find none. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, counsel represented O'Neill at all stages of the proceedings, and the sentences imposed was within the statutory limits. We decline to order briefing, and we affirm O'Neill's conviction and sentence.

**¶20** Upon the filing of this decision, defense counsel shall inform O'Neill of the status of his appeal and of his future options. Defense counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984). O'Neill shall have 30 days from the date of this decision to proceed, if he desires, with a pro per motion for reconsideration or petition for review.

**CONCLUSION**

**¶21** We affirm O'Neill's conviction and sentence.



Ruth A. Willingham · Clerk of the Court
FILED: ama