## PEOPLE *v.* LOGIE.

### SAME *v.* DIGGS.

1. CRIMINAL LAW—REMARKS BY PROSECUTOR—OBJECTIONS.

   Where two defendants were tried jointly and counsel for one defendant directed the trial judge's attention to objectionable remarks on the part of the prosecutor, repetition of such objections by counsel for the other defendant was unnecessary.

2. SAME—CONSPIRACY—PROSECUTOR'S REMARKS.

   In prosecution of State senators on charge of conspiring corruptly to affect and influence action of the legislature, with respect to a certain bill, numerous alleged prejudicial and derogatory remarks of special prosecutor *held,* not to have influenced the jury adversely to the rights of defendants.

3. SAME—PRESUMPTIONS OF INFERENCES BY JURORS.

   It is not to be presumed that jurors, in direct violation of their well-known duty, indulge in unjustifiable inferences from remarks made in the heat of trial and under provocation.

REFERENCES FOR POINTS IN HEADNOTES
[1–13] 43 Am. Jur., Public Officers, §§ 327–339.
[1] 53 Am. Jur., Trial, § 132 *et seq.*
[2] 53 Am. Jur., Trial, §§ 458, 459.
[4–6, 9] 58 Am. Jur., Witnesses, §§ 657–661.
[7] 53 Am. Jur., Trial, § 34.
[10] 53 Am. Jur., Trial, §§ 529, 530.
[11] 53 Am. Jur., Trial, §§ 527, 528.
[12] 11 Am. Jur., Conspiracy, §§ 37–43.
[13] 53 Am. Jur., Trial, § 35.

4. WITNESSES—CHARACTER—CROSS-EXAMINATION AS TO SUBSEQUENT ACTS.

Generally a prosecutor is not justified in cross-examining a character witness as to opinions formed after learning about the accusation or as to its effect on his opinion of defendant's reputation.

5. SAME—CHARACTER—CROSS-EXAMINATION.

Character witnesses may be cross-examined for the purpose of testing their memory, knowledge and candor, and to determine their freedom from bias, prejudice, or interest.

6. CRIMINAL LAW—CROSS-EXAMINATION OF CHARACTER WITNESS—ABUSE OF DISCRETION.

Rulings of a trial judge with respect to cross-examination of a defendant's character witnesses by the prosecutor should not be set aside in the absence of a showing of an abuse of discretion.

7. SAME—ADMONITION AS TO WASTING TIME—PRESENTATION OF CASE.

Admonition to counsel that considerable time was being wasted, made for the purpose of expediting the hearing of a criminal case *held,* not to have unduly hurried defendants in their presentation of the case.

8. SAME—ADMISSION OF IMMATERIAL TESTIMONY—PREJUDICE.

In prosecution of State senators on charge of conspiring corruptly to affect and influence action of the legislature, with respect to a certain bill, admission of immaterial testimony in that the identification of one of the members of a senate committee to which bill had been committed was referred to as "late" *held,* not prejudicial to defendants.

9. SAME—CONSPIRACY—CROSS-EXAMINATION OF CHARACTER WITNESSES.

Cross-examination of defendants' character witnesses in prosecution of State senators on charge of conspiring corruptly to affect and influence action of the legislature with respect to a certain bill *held,* not to have unduly prejudiced defendants before the jury, where some questions had been prompted by suggestions of counsel for one of the defendants, others to test the witness' knowledge of the situation, his credibility.

10. SAME—REQUESTS TO CHARGE—INSTRUCTION.

In criminal prosecution a trial judge who modifies the language of a pertinent request to charge so as to adapt it to the facts does not commit error where he sufficiently instructs the jury as to the law when charge is construed as a whole.

11. SAME—CREDIBILITY—REQUESTS TO CHARGE—INSTRUCTIONS.

In prosecution of State senators on charge of conspiring corruptly to affect and influence action of the legislature, with respect to a certain bill, where instructions given as to credibility contained the substance of a defendant's request to charge, did not unduly emphasize the prosecutor's side of the case, and do not appear to contain prejudicial errors, the failure to give request proffered by one defendant was not error, notwithstanding the case turned on whether the jury would believe a self-confessed perjured conspirator or defendants.

12. SAME—CONSPIRACY—SUFFICIENCY OF EVIDENCE.

In prosecution of State senators on charge of conspiring corruptly to affect and influence action of the legislature, with respect to a certain bill, evidence *held,* sufficient to permit jury finding defendants were guilty beyond a reasonable doubt.

13. SAME—IRREGULARITIES—FAIR AND IMPARTIAL TRIAL.

On appeal from judgment of conviction of crime the test is not whether there were some irregularities in the trial but whether defendants had a fair and impartial trial (3 Comp. Laws 1929, § 17354).

Appeal from Ingham; Simpson (John), J., presiding. Submitted February 17, 1948. (Docket Nos. 82, 83, Calendar Nos. 43,269, 43,270.) Decided May 18, 1948. Rehearing denied defendant Diggs June 29, 1948. Certiorari denied defendant Diggs by Supreme Court of the United States December 6, 1948.

Jerry T. Logie and Charles C. Diggs were convicted of conspiracy to corrupt the legislature. Affirmed.

*Albert W. Black* and *Hand & Hand,* for defendant Logie.

*Oscar W. Baker, Jr.,* for defendant Diggs.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *H. H. Warner, Victor C. Anderson* and *Daniel J. O'Hara,* Assistants Attorney General, and *Richard B. Foster,* Special Assistant Prosecuting Attorney, for the people.

BUSHNELL, J. Defendants Jerry T. Logie and Charles C. Diggs were tried jointly and convicted on the charge of conspiring corruptly to affect and influence the action of the legislature of the State of Michigan with respect to House Bill No. 22. This bill, which had to do with the amendment of the act regulating and licensing the conduct of racing meets, after passing the house, was transmitted to the senate, where it was referred to the committee on State affairs. At the time, defendants Logie and Diggs were State senators and members of this committee, its vice-chairman being Senator Chester M. Howell. On Howell's motion, all members of the State affairs committee voted to indefinitely postpone action on this bill.

At the trial, Howell, who was the chief witness for the people, under a grant of immunity, testified that he had been given $3,000 by one Constantine Daniels for the purpose of influencing votes on this bill. He said that Daniels told him that he wanted $1,000 of this amount to go to Logie and $250 to Diggs. Howell claimed that he informed both defendants of the plan to defeat the bill, to which both agreed, and that he paid Logie $500 on one occasion and $300 on another, and gave Diggs $150, telling them there would be more later. He admitted that he deliberately cheated both of them out of the balance of the money.

The questions raised in the separate briefs of appellants have to do with claimed prejudicial conduct of the special prosecutor, errors in the admission of certain testimony, failure of the trial judge to charge the jury as requested, errors in the charge given, undue discussion and emphasis in the charge of the prosecutor's side of the case; that the verdict of the jury was contrary to the great weight of the evidence, and that defendants were denied a fair and impartial trial.

In the respective briefs and in the arguments on appeal, much emphasis was placed upon claimed improper and inflammatory remarks by the special prosecutor, said to be deliberately calculated to convey to the jury the impression that defendants' counsel and their character witnesses were attempting to conceal the true facts. It is argued that these remarks were made with the deliberate purpose of belittling defendants' respective counsel and in order to prejudice the jury in weighing the testimony. The State sought to point out that defense counsel made few, if any, objections to the remarks of the special prosecutor, and when objections were made, curative rulings followed, and that, in any event, the remarks were harmless when considered in the light of their context and the circumstances of the trial.

It was hardly necessary for one counsel to repeat the objections made by the other when sufficient objections were interposed to direct the trial judge's attention to this situation. The claimed objectionable remarks of the prosecutor are too numerous to quote here. The controlling questions are: (1) Did the trial judge abuse his discretion by permitting the special prosecutor to heckle and harass defendants' counsel? (2) Were they unnecessarily "hurried" in presenting their case? (3) Did the treatment thus accorded defendants by the special prosecutor and the court deprive them of their constitutional right to a fair and impartial trial?

These same claims were recently presented in *People* v. *DeLano,* 318 Mich. 557. DeLano, also a State senator, was charged with the same crime with respect to another pending bill, tried before the same judge, prosecuted by the same special prosecutor, with Howell as the chief witness against him. Counsel for DeLano listed "112 assignments of error relating to prejudicial and derogatory remarks of the special prosecuting attorney." In the review of that

conviction, as in the instant case, although the contest was a heated one, we were not convinced that the prosecutor's remarks "influenced the jury adversely to the rights of the defendants." See, also, the rule laid down in *People* v. *Burnstein*, 261 Mich. 534, 538, quoted in the *DeLano Case*. As said in the *Burnstein Case:* "It is not to be presumed that jurors, in direct violation of their well-known duty, indulge in unjustifiable inferences" from remarks made in the heat of trial and under provocation. Nor do we find in the instant record that defendants' own counsel were entirely blameless. In making this observation we do not suggest that trial judges be relieved of their responsibility. However, we find no room for criticism of the trial judge's conduct in the instant case. His task was difficult and the problem serious, and yet every consideration was given to the rights of the defendants. On review, we find no abuse of judicial discretion.

The general rule is that the prosecutor is not justified in cross-examining a character witness as to opinions formed after learning about the accusation or as to its effect on his opinion of defendant's reputation. *People* v. *Snyder*, 173 Mich. 616; *People* v. *Huff*, 173 Mich. 620; and *People* v. *Hill*, 258 Mich. 79. Character witnesses, however, may be cross-examined for the purpose of testing their memory, knowledge and candor, and to determine their freedom from bias, prejudice or interest. 1 Gillespie on Michigan Criminal Law & Procedure, § 339, and authorities there cited.

The rulings of the trial judge with respect to such examination should not be set aside in the absence of a showing of an abuse of discretion. Opinions may differ as to the propriety of certain types of examination, but courts should not unduly hamper prosecutors and trial judges, nor presume that jurors are

unmindful of their duties.  See *Peters* v. *Wurzburg*, 267 Mich. 45, 49.

Examination of the record does not disclose that counsel were unduly hurried in their presentation of the case.  It is true that the trial judge was required to admonish counsel that considerable time was being wasted, but in no instance were his remarks for any other purpose than to expedite the hearing.

Counsel for defendants claim prejudicial error in the admission of immaterial testimony with respect to an inquiry regarding the members of the State affairs committee of the senate, particularly Senator Hooper.  This matter first arose when Norman E. Philleo, assistant clerk of the house of representatives, was being examined.  He testified as to the names and home addresses of the members of this committee and identified one of them as the late Warren G. Hooper.  An objection was made as to the characterization of the "late" Senator Hooper, which was overruled.  No mention was made in connection with Hooper in this examination to the prejudice of defendants.

The secretary of State, Herman H. Dignan, who was a member of the senate and its State affairs committee in 1941, testified as a character witness for Logie.  On cross-examination he was asked, over objection, whether he, as secretary of State, believed in graft.  The court permitted this question to stand on the ground that it was to test his credibility.  Dignan made the obvious answer that he did not.

Reviewing courts are unable to have before them the tone of voice or the manner in which questions are put.  That is why rulings in such matters must rest largely in the sound discretion of the trial judge.  The suggested innuendo of the language of a given question may have thus been entirely absent.  The same observation must be made of the suggestion

to Senator Dignan, that the bill in question was "what is commonly known in legislative parlance as a hot bill."

Upon Dignan's denial he was pressed to say whether he had ever heard that one Gail Handy was offered a bribe in the house by one Floyd Fitzsimmons. The court permitted a series of questions with respect to this subject-matter as a test of the witness' knowledge of the situation. Based on the cold language of the record, there was no apparent attempt disclosed to unduly prejudice defendants before the jury. This same observation applies to the examination of other character witnesses, including former Senator Earl H. Burhans. Some of the testimony on cross-examination claimed to be prejudicial was the result of suggestions of Logie's counsel in his cross-examination of Howell, to much of which only one objection was interposed, that being that the answer was a conclusion on the part of the witness.

Defendant Diggs filed no requests to charge, but defendant Logie filed 16 requests. Logie now argues that the court erred in failing to charge the jury with respect to 8 of them. These requests and the charge of the court, which are printed in full in the record, have been carefully compared. We repeat what we said in *People* v. *Placido,* 310 Mich. 404, 407:

"The court had a right to modify the language of the request to charge so as to adapt it to the facts of the case. As stated in *People* v. *Collins,* 303 Mich. 34, no error is committed by failing to follow the wording of defendant's request to charge when a trial judge, using his own phraseology, sufficiently instructs the jury as to the law. The charge when read in its entirety was correct."

Logie contends that a portion of the charge concerning the testimony of Howell, a self-confessed perjured conspirator, was highly prejudicial. It was

necessary for the court to instruct the jury with relation to purported conflicts in Howell's testimony. Logie testified in his own behalf, as did Diggs. The case turned on whether the jury would believe Howell or the defendants. It was, therefore, of particular importance that the jury thoroughly understand the law applicable to such situation. Logie and Diggs argue that under the rule stated in *People* v. *Beath,* 277 Mich. 473, *People* v. *Heidt,* 312 Mich. 629, and *People* v. *Kanar,* 314 Mich. 242, the court should have charged the jury as requested, rather than in the language of the second paragraph of that portion of the charge we now quote:

"I charge you that the testimony of a self accused conspirator or accomplice, should be carefully scrutinized to ascertain to what extent it is corroborated by other testimony or other witnesses or circumstances, and that it depends for the weight which you should give it upon the extent to which it is corroborated; and that such testimony should be received by you with the utmost caution and care, because of the interest he may have in the outcome, and his desire as a result of this interest, to color or shade his testimony.

"Certain questions and answers from testimony given before the examining magistrate have been read to and shown to witnesses. The statements contained in such testimony are not substantive proof of the matters therein stated and are to be considered by you only for the purpose of affecting the credibility of the witness. If, from such cross-examination, by use of such examination testimony, you believe that a witness has testified falsely as to any material fact, the only use that you can make of such contradictory examination is to determine whether or not you will disbelieve the entire testimony of the witness.

"I instruct you that:

"You are the sole judge of the credibility of the witnesses. It is for you, and you alone, to say what

weight and credence shall be given to the testimony of any witness who has testified in this case. In measuring and weighing the testimony of any witness, you have a right to take into consideration his or her appearance on the stand, his or her apparent candor or want of candor in testifying; his or her knowledge or want of knowledge of the matter concerning which he or she has testified. And in weighing and measuring the testimony of any witness, and in determining what credence shall be given to that testimony you have a right to take into consideration any bias, or prejudice or motive that may have actuated the witness in so testifying. You have a right to take into consideration any interest which the witness may have in the outcome of the case. In that connection, in weighing and measuring the testimony of any witness who has testified in this case, you have a right to take into consideration their interest in the outcome of the case. You have no right for light or trivial reasons to find that any witness has testified falsely, and it will be your duty, if possible, to reconcile and harmonize the testimony upon the theory and basis that each and every witness has attempted to tell the truth. If you are unable to so reconcile and harmonize the testimony of the witness, it will be your duty to determine which is true and that which is untrue, and when you have made that determination to discard and disregard the testimony which you find to be untrue, and to reach a verdict based upon evidence in the case which under all the circumstances you believe to be true.''

The credibility of the witnesses under the quoted portion of the charge was left to the jury. The substance of Logie's request is contained within the court's charge. The court did not unduly emphasize the prosecutor's side of the case, and we find no prejudicial errors in the charge.

We cannot say that the verdict was not supported by sufficient evidence so as to show defendants were

guilty beyond a reasonable doubt. No prejudicial errors are found in the trial amounting to a miscarriage of justice.

"The test is not whether there were some irregularities but instead did the defendants have a fair and impartial trial. 3 Comp. Laws 1929, § 17354 (Stat. Ann. § 28.1096)." *People v. O'Hara,* 278 Mich. 281, 306.

The judgments are affirmed.

SHARPE, BOYLES, REID, NORTH, and BUTZEL, JJ., concurred.

DETHMERS and CARR, JJ., did not sit.