PEOPLE v JOHNNY JOHNSON

Docket No. 55727. Submitted December 15, 1981, at Detroit.—Decided February 19, 1982.

Johnny Johnson was convicted of manslaughter and possession of a firearm while in the commission of a felony in Wayne Circuit Court, Roland L. Olzark, J. The defendant appeals, alleging that: (1) the trial court denied him the right of confrontation by refusing to allow his counsel to impeach a res gestae witness with evidence of a prior statement that the witness made to the police; (2) error requiring reversal occurred when the trial court excluded from evidence photographs of the door and hallway where the shooting occurred taken three months after the incident; (3) he was denied a fair trial by prosecutorial misconduct; (4) the trial court erred in instructing the jurors to disregard a portion of a witness's testimony; and (5) the trial court erred by shifting the burden of proof on the issue of self-defense. *Held:*

1. The Court of Appeals did not conclude that the trial judge abused his discretion in determining that there was insufficient contradiction to justify impeachment of the res gestae witness. Disallowance of the cross-examination did not impinge upon the defendant's right of confrontation.

2. The exclusion of the photographs from evidence consti-

REFERENCES FOR POINTS IN HEADNOTES

[1] 81 Am Jur 2d, Witnesses § 612.

[2] 81 Am Jur 2d, Witnesses §§ 596, 597.

Use of prior inconsistent statements for impeachment of testimony of witnesses under Rule 613, Federal Rules of Evidence. 40 ALR Fed 629.

[3] 29 Am Jur 2d, Evidence §§ 788, 793.

Authentication or verification of photograph as basis for introduction in evidence. 9 ALR2d 899.

[4] 5 Am Jur 2d, Appeal and Error §§ 624, 625.

[5] 29 Am Jur 2d, Evidence § 251.

[6] 81 Am Jur 2d, Witnesses §§ 500, 502, 503.

Cross-examination of character witness for accused with reference to particular acts or crimes. 13 ALR4th 796.

[7] 29 Am Jur 2d, Evidence §§ 496, 497.

[8] 5 Am Jur 2d, Appeal and Error § 778.

tuted a proper exercise of the trial court's discretion since a foundation for admission was lacking.

3. The defendant was not denied a fair trial due to prosecutorial misconduct. The majority of the alleged acts of misconduct were not objected to at trial. Since no manifest injustice resulted, the Court of Appeals did not consider those matters upon review. Those instances where defense counsel did object did not result in sufficient prejudice that the defendant was denied a fair trial.

4. Defendant's claim that the trial court erred in instructing the jurors to disregard a portion of a witness's testimony is without merit.

5. The trial court did not improperly shift the burden of proof regarding self-defense because the instruction merely informed the jurors that each side would present closing arguments seeking favorable interpretations of the evidence. The jurors were specifically told that the burden was upon the prosecution to prove that defendant did not act in self-defense.

Affirmed.

1. EVIDENCE — IMPEACHMENT.

Generally, the only contradictory evidence that is admissible for impeachment is that which directly tends to disprove the exact testimony of the witness.

2. EVIDENCE — IMPEACHMENT — INCONSISTENT STATEMENTS.

A question of whether a witness's testimony at trial was inconsistent with a prior statement so that impeachment of the witness may be allowed is within the discretion of the trial judge.

3. EVIDENCE — PHOTOGRAPHS.

A proper foundation for admission of a photograph into evidence is made if someone familiar from his own observation with the scene photographed testifies that the photograph is an accurate representation of the scene.

4. APPEAL — PRESERVING QUESTION.

Alleged prosecutorial misconduct unobjected to at the trial level should not be considered on appeal, absent manifest injustice.

5. EVIDENCE — RELEVANT EVIDENCE.

Determinations of whether or not evidence is relevant rest within the sound discretion of the trial court, and the court's determination will not be upset on appeal unless a clear abuse of discretion has occurred.

6. WITNESSES — CHARACTER WITNESSES — CROSS-EXAMINATION.

A character witness may be cross-examined in order to test his memory, knowledge and candor and to determine his freedom from bias, prejudice or interest.

7. EVIDENCE — HEARSAY.

Admission of hearsay evidence is not so offensive to the maintenance of a sound judicial system that it can never be considered harmless; frequently, such evidence will minimally prejudice a defendant, such as when it is cumulative of other evidence.

8. CRIMINAL LAW — HARMLESS ERROR.

Error in a criminal trial is not harmless if, in a trial free of the error complained of, it is reasonably possible that even one juror might have voted to acquit the defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy L. Cronin,* Assistant Prosecuting Attorney, for the people.

*Mark E. Weiss,* for defendant on appeal.

Before: N. J. KAUFMAN, P.J., and BASHARA and R. I. COOPER,* JJ.

PER CURIAM. Defendant was originally charged with first-degree murder, MCL 750.316; MSA 28.548, and possession of a firearm while in the commission of a felony, MCL 750.227b; MSA 28.424(2), and was found guilty in a jury trial of manslaughter, MCL 750.321; MSA 28.553, and possession of a firearm while in the commission of a felony. He was sentenced to consecutive prison terms of 6 to 15 years for manslaughter and 2 years on the felony-firearm count, and now appeals as of right.

The charges against defendant arose out of the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

slaying of Moses Marks in the early morning hours of August 12, 1978, at 21 Kendall, in Highland Park. Defendant had lived at the Kendall address for about a year with his girlfriend, Carolyn Waymer. Prior to that time, Ms. Waymer had been the decedent's girlfriend for about three years. At 2 a.m., on the morning in question, Waymer received two phone calls from Marks. After hanging up the second time, Waymer took her telephone off the hook. Shortly afterwards, Marks came to the door of the house and attempted to gain entry. Although Waymer told Marks to leave because he was drunk, Marks forced the door open, causing it to hit the defendant in the head. Defendant fell backwards, pulled out a pistol and shot Marks twice. Marks ran across the street and collapsed to the ground.

Defendant's first appellate claim is that the trial court denied him the right of confrontation by refusing to allow counsel to impeach a res gestae witness with a prior statement made to the police. John Koger testified that he was in his car in a lot next to Carolyn Waymer's house at the time of the shooting and that he observed Moses Marks cross the street toward the Waymer residence. He stated that although he could not see the doorway, he heard Marks knock on the door and say, "Carolyn, I've been good to you, open this door". Koger testified that he heard arguing, Marks' voice talking and the sound of knocking for about two minutes. Finally, Koger heard three shots and saw Marks run off the porch. Although he backed his car up, he could no longer see Marks, but observed an unidentified man run by, holding what appeared to be a revolver. Defense counsel claimed that Koger's testimony was inconsistent with a prior statement in two respects. First, counsel

contended that the prior statement characterized Marks' conduct on the porch as "arguing", as opposed to merely requesting to be let in. Second, counsel pointed out that Koger had told the police that he actually saw Marks run back across the street and fall, while his trial testimony indicated that he only saw Marks run away in the direction of the street before his own vision was blocked. The trial court permitted impeachment with regard to whether Marks was arguing, but not with regard to whether Koger had observed Marks reach the street when Marks ran from Ms. Waymer's house.

As a general rule, the only contradictory evidence that is admissible is that which directly tends to disprove the exact testimony of the witness. *People v McGillen #1,* 392 Mich 251, 268; 220 NW2d 677 (1974). The question of inconsistency is one within the discretion of the trial judge. *People v Graham,* 386 Mich 452, 457; 192 NW2d 255 (1971). Here, we cannot say that the trial judge abused his discretion in determining that there was insufficient contradiction to justify impeachment with the second claimed inconsistency. The prior statement did not directly tend to disprove that Koger observed Marks run in the direction of the street, but rather tended to show that he also observed Marks make it to the other side of the street before falling. The statement, therefore, was not inconsistent and exclusion did not impinge upon defendant's right of confrontation.

Defendant next argues that error requiring reversal was committed when the trial court excluded photographs of the door and hallway where the shooting occurred taken three months after the incident. A proper foundation for admission of

a photograph is made if someone familiar, from his own observation, with the scene photographed testifies that the photograph is an accurate representation of the scene. *People v Riley,* 67 Mich App 320, 322; 240 NW2d 787 (1976), *rev'd on other grounds* 406 Mich 1016; 289 NW2d 928 (1979), *People v Heading,* 39 Mich App 126, 132; 197 NW2d 325 (1972). Here, the photographs were offered to show how the door appeared on the night of the shooting. Carolyn Waymer, who identified the photographs, could not say that they accurately depicted the condition of the door at that time. In fact, Ms. Waymer indicated that she had only recently observed that the door hinge was loose and that nails were coming out. Although defendant testified that the door was in the same condition, his claim was subject to some doubt since he apparently fled the scene moments after the shooting and did not return and observe the door. Thus, exclusion constituted a proper exercise of the trial court's discretion since a foundation for admission was lacking.

Defendant's third appellate claim is that he was denied a fair trial by prosecutorial misconduct. The majority of the alleged acts of misconduct were unobjected to at trial. Since we find that no manifest injustice has taken place, we decline to consider those matters upon review. *People v Stinson,* 88 Mich App 672, 674; 278 NW2d 715 (1979). However, in three instances, defense counsel did object to particular lines of questioning by the prosecutor now alleged to have resulted in a denial of a fair trial.

The first instance took place when the prosecutor questioned Carolyn Waymer concerning a meeting with the defendant at the hotel following the shooting:

"*Q.* And was it at that time that you agreed between yourself and the defendant to make up this story about him breaking in the door; isn't it?

"*A.* No."

Defendant's claim that this exchange was designed to depict Ms. Waymer and defendant as bad and immoral persons is without merit. The question constituted legitimate cross-examination by the prosecutor of Ms. Waymer, a res gestae witness, concerning her involvement with defendant in the incident. The question can hardly be considered to have unfairly prejudiced the defendant in light of the fact that it was answered in the negative and in view of the express instruction to the jury that the questions of the attorneys were not evidence.

Defense counsel also objected to extended cross-examination of a character witness for the defendant regarding the witness's familiarity with defendant's marriage and children. The trial court allowed the questioning to continue as being relevant to the witness's knowledge of defendant and his reputation. Determinations of relevancy rest within the trial court's discretion and will not be reversed absent an abuse of discretion. *People v Strickland,* 78 Mich App 40, 54; 259 NW2d 232 (1977). No abuse is evident here. A character witness may be cross-examined in order to test his memory, knowledge and candor, and to determine his freedom from bias, prejudice or interest. *People v Logie,* 321 Mich 303, 308; 32 NW2d 458 (1948).

The final instance of alleged misconduct that was objected to occurred when the prosecutor impeached Ms. Waymer with a prior inconsistent statement that she had purportedly given to the police. The statement was not signed by Waymer and during the trial she denied making it. The officer alleged to have recorded the statement was

not called to verify that it was made. Plainly, under these circumstances the memorandum utilized constituted hearsay evidence of Ms. Waymer's alleged remarks. *People v Rodgers,* 388 Mich 513; 201 NW2d 621 (1972), *adopting People v Rodgers,* 36 Mich App 211, 220-231; 193 NW2d 412 (1971) (LEVIN, J., *dissenting).* However, using the test enunciated in *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972), we conclude that the error was harmless in this case. First, admission of hearsay evidence is not so offensive to the maintenance of a sound judicial system that it can never be considered harmless. Frequently, such evidence will minimally prejudice a defendant, such as when it is cumulative of other evidence. *Cf. People v Gwinn,* 111 Mich App 223; 314 NW2d 562 (1981), *People v Sommerville,* 100 Mich App 470, 490; 299 NW2d 387 (1980). Second, in the instant case, the error was harmless beyond a reasonable doubt. The only distinctions from Ms. Waymer's trial testimony that the jurors were apprised of were references to Moses Marks "banging on the door" and saying that he wanted to come over when he telephoned. In the context of the entire trial, the prejudice from those remarks was minimal; absent the references it is not reasonably likely that a single juror would have voted for acquittal. *People v Bryan,* 92 Mich App 208, 218; 284 NW2d 765 (1979).

Defendant's next appellate claim, that the trial court erred in instructing the jurors to disregard a portion of Carolyn Waymer's testimony, is without merit. When Ms. Waymer was first questioned concerning Moses Marks' violent character her testimony was excluded on the basis that a foundation had not yet been laid that defendant acted in self-defense. Clearly, this ruling was correct. *People v Hall,* 83 Mich App 632, 640; 269 NW2d 476 (1978). In any event, a foundation was subse-

quently established and the testimony was then admitted. No error is apparent. Related to this issue is defendant's claim that he was denied his Fifth Amendment right against self-incrimination since he was required to take the stand to lay the above foundation. This contention is also without merit. The trial court expressly stated that the foundation did not have to be established specifically by defendant's own testimony.

Defendant's final argument is that the trial court shifted the burden of proof on the issue of self-defense with the following preliminary instruction at the start of trial:

"Now, when both parties have put in all the proof and rested their cases, then they will talk to you in a closing argument. Mr. Roberts will speak to you first for the people, and in his argument he will try to get you to accept the viewpoint of evidence which he feels will result in a verdict favorable to his position.

"When he is done, then Mr. Khoury for the defense will talk to you in a closing argument, and he similarly will seek to influence you to look at the evidence in the light favorable to his client and, with a verdict favorable to his client.

"When he is done, the prosecutor will have another opportunity to talk to you in rebuttal."

Defendant's failure to object precludes consideration of this claimed instructional error. GCR 1963, 516.2. Moreover, this particular instruction patently did not shift the burden of proof, but merely informed the jurors that each side would present closing arguments seeking favorable interpretations of the evidence. Finally, in the jury instructions at the close of trial, the jurors were specifically told that the burden was upon the prosecution to prove that defendant did not act in self-defense.

Affirmed.