PEOPLE v LOBAITO

Docket No. 66035. Submitted December 12, 1983, at Detroit.—Decided
     April 3, 1984.

   Defendant, Leonard T. Lobaito, was convicted following a jury
     trial in the Macomb Circuit Court, Lawrence P. Zatkoff, J., of
     first-degree murder and possession of a firearm in the commis-
     sion of a felony. He was sentenced to consecutive prison terms
     of two years for the felony-firearm conviction and life imprison-

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 412 *et seq.*

   Modern status of rule governing admissibility of evidence obtained
     by unlawful search and seizure. 50 ALR2d 531.

[2, 5] 68 Am Jur 2d, Searches and Seizures § 35 *et seq.*

   Validity, under Federal Constitution, of consent to search—Su-
     preme Court cases. 36 L Ed 2d 1143.

[3, 4] 68 Am Jur 2d, Searches and Seizures § 46 *et seq.*

[6] 4 Am Jur 2d, Appeal and Error § 166.

[6, 7] 5 Am Jur 2d, Appeal and Error § 704.

[7] 4 Am Jur 2d, Appeal and Error § 516.

   5 Am Jur 2d, Appeal and Error § 898.

   29 Am Jur 2d, Evidence §§ 529, 543 *et seq.*, 582, 584, 587.

[8] 17 Am Jur 2d, Continuance § 42.

[8, 9] 41 Am Jur 2d, Indictments and Informations §§ 56, 60.

[9] 5 Am Jur 2d, Appeal and Error § 611.

[10, 11] 29 Am Jur 2d, Evidence § 708.

[12] 29 Am Jur 2d, Evidence § 788.

   Authentication or verification of photograph as basis for introduc-
     tion in evidence. 9 ALR2d 899.

[13, 15] 5 Am Jur 2d, Appeal and Error §§ 601, 602.

[13, 14] 81 Am Jur 2d, Witnesses §§ 230, 231, 247.

   Privilege, in judicial or quasi-judicial proceedings, arising from
     relationship between psychiatrist or psychologist and patient. 44
     ALR3d 24.

[15] 5 Am Jur 2d, Appeal and Error § 881.

[16] 76 Am Jur 2d, Trial § 1043.

   Right to have reporter's notes read to jury. 50 ALR2d 176.

[17] 21 Am Jur 2d, Criminal Law § 629.

   40 Am Jur 2d, Homicide § 556.

ment on the first-degree murder conviction. Defendant appeals raising 12 issues. *Held:*

1. The trial court correctly determined that, under the circumstances of this case, the defendant's words and actions sufficiently established his consent to the search of his premises without a warrant. Defendant's motion to suppress the murder weapon and other evidence found in such search was, thus, properly denied.

2. Since the murder weapon was legally obtained in the search of defendant's premises, the search warrant for the premises obtained thereafter which contained references to the murder weapon in the affidavit in support thereof was valid.

3. The trial court did not err in ruling that a statement given by the defendant to the police on the day that the victim's body was found was voluntary and admissible.

4. Defense counsel's failure to object to the late indorsement of witness Craprotta bars appellate review of such late indorsement. The trial court did not abuse its discretion in permitting the delayed indorsement of witness Gleason.

5. The trial court did not abuse its discretion in excluding certain hearsay testimony from evidence which the defendant sought to have admitted pursuant to the hearsay exception for excited utterances. The proposed evidence did not meet the requirements for application of the excited utterance exception.

6. The trial court erred in finding that an adequate foundation had not been laid for the admission of certain photos offered in evidence by the defendant. However, the error was harmless beyond a reasonable doubt under the facts of the case.

7. Defendant's failure to raise a claim in the trial court that the testimony of Dr. Doyal, a child psychologist who had treated the defendant's three-year-old son, was inadmissible under the psychologist-patient privilege statute precludes appellate review of the claim. Moreover, even if the issue were properly preserved, the defendant is not entitled to assert the statutory privilege in this case. Defendant also did not preserve the issue regarding application of the physician-patient privilege statute. Furthermore, such statute does not apply to the present case.

8. Defendant's failure to object at trial to the admission of testimony by an attorney concerning statements made by the defendant's three-year-old son in an interview precludes appellate review of the issue. Even if error occurred, there was no manifest injustice so as to require reversal.

9. The trial court did not abuse its discretion in denying the

defendant's request to reinstruct the jury after certain testimony was reread to the jury at the jury's request.

10. The trial court's jury instructions were adequate. The trial court did not abuse its discretion in declining to give an additional instruction requested by the defendant that a "finding of not guilty does not necessarily mean that you find the defendant innocent".

11. Defendant's contention that the trial court erred in failing to excuse two jurors who asked to be excused prior to deliberations is not supported by the record and is entirely without merit.

12. The mandatory sentence of life imprisonment imposed as a result of the conviction for first-degree murder does not constitute cruel and unusual punishment.

Affirmed.

1. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW.

All evidence obtained in violation of the constitutional protection against unreasonable searches and seizures is inadmissible at trial (US Const, Am IV; Const 1963, art 1, § 11).

2. SEARCHES AND SEIZURES — SEARCH WITHOUT WARRANT.

A search and seizure made without a warrant is per se unreasonable unless shown to fall within one of the various exceptions to the warrant requirement; consent is one such exception.

3. SEARCHES AND SEIZURES — SEARCH WITHOUT WARRANT — CONSENT.

The burden is on the prosecution, when it is alleged that a person consented to a search and seizure made without a warrant, to provide by clear and positive evidence that the consent was unequivocal and specific, and freely and intelligently given; the validity of a consent is a question of fact to be decided upon the evidence and all reasonable inferences drawn from it, examining the totality of the circumstances.

4. SEARCHES AND SEIZURES — SEARCH WITHOUT WARRANT — CONSENT.

A defendant's knowledge of his right to refuse to allow a search is but one factor to be considered in a hearing regarding the suppression of evidence obtained in a search made without a warrant.

5. SEARCHES AND SEIZURES — SEARCH WITHOUT WARRANT — CONSENT.

A defendant's conduct, by itself, can, under proper circumstances, be sufficient to constitute consent to a search.

6. APPEAL — EVIDENCE — SUPPRESSION OF EVIDENCE.

A trial court's conclusion on a motion to suppress evidence will not be overturned on appeal unless it is found to be clearly erroneous; a ruling may be found to have been clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made.

7. WITNESSES — CRIMINAL LAW — STATEMENTS BY DEFENDANT — APPEAL.

The voluntariness of a defendant's statement given to the police is a question of fact to be determined by reviewing the totality of the circumstances; the Court of Appeals, in reviewing a trial court's determination regarding the voluntariness of a defendant's statement, must examine the whole record and make an independent determination on the issue of voluntariness; the Court of Appeals will affirm the trial court's determination absent a definite and firm conviction that the trial court erred.

8. WITNESSES — CRIMINAL LAW — LATE INDORSEMENT OF WITNESSES.

The late indorsement of witnesses is a matter within the trial court's discretion which should be exercised with due regard for the defendant's right to a fair trial; late indorsement may be permitted and a continuance granted to prevent prejudice to the defendant, however, a defendant's failure to request a continuance or time to interview the newly indorsed witness tends to negate the defendant's argument that tardy indorsement resulted in prejudice.

9. WITNESSES — CRIMINAL LAW — LATE INDORSEMENT OF WITNESSES — APPEAL.

A defendant's failure to object to the late indorsement of a witness at his trial bars appellate review of the defendant's claim that he was prejudiced by such late indorsement.

10. EVIDENCE — HEARSAY — EXCITED UTTERANCES.

Admission of hearsay evidence under the excited utterance exception to the hearsay rule is generally within the trial court's discretion.

11. EVIDENCE — HEARSAY — EXCITED UTTERANCES — RULES OF EVIDENCE.

The three requirements for application of the excited utterance exception to the hearsay rule are that the statement (1) must arise from a startling occasion, (2) must be made before there is time to contrive or misrepresent, and (3) must relate to the circumstances of the startling occasion (MRE 803[2]).

12. EVIDENCE — CRIMINAL LAW — PHOTOGRAPHS — FOUNDATION FOR
    ADMISSION.

    A proper foundation for the admission of a photograph in a
    criminal trial is made if someone who is familiar from his own
    observation of the scene photographed testifies that the photo-
    graph is an accurate representation of the scene.

13. CRIMINAL LAW — WITNESSES — PSYCHOLOGIST-PATIENT PRIVILEGE
    — PHYSICIAN-PATIENT PRIVILEGE — APPEAL.

    A defendant's failure to raise the psychologist-patient privilege at
    his trial precludes the appellate consideration of a claim that
    the testimony of a psychologist was subject to such privilege;
    failure to raise the physician-patient privilege likewise pre-
    cludes consideration of a similar claim regarding a physician's
    testimony (MCL 333.18237, 600.2157; MSA 14.15[18237],
    27A.2157).

14. WITNESSES — PSYCHOLOGIST-PATIENT PRIVILEGE.

    The purpose of the psychologist-patient privilege statute is to
    protect the confidential nature of the psychologist-patient rela-
    tionship (MCL 333.18237; MSA 14.15[18237]).

15. CRIMINAL LAW — EVIDENCE — PRESERVING QUESTION — APPEAL.

    A defendant's failure to object to testimony admitted at trial
    precludes appellate review of the admission of such testimony
    unless the challenged testimony resulted in manifest injustice
    so as to require reversal.

16. TRIAL — READING TESTIMONY TO JURY.

    The reading and extent of the reading is a matter within the trial
    court's discretion when a jury requests that testimony be
    reread to it.

17. HOMICIDE — FIRST-DEGREE MURDER — MANDATORY SENTENCES —
    CONSTITUTIONAL LAW.

    The statute which provides a mandatory life sentence for first-
    degree murder does not violate the constitutional guarantees
    against cruel and unusual punishment (US Const, Am VIII;
    Const 1963, art 1, § 16; MCL 750.316; MSA 28.548).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *George N. Parris,* Prose-cuting Attorney, *Don L. Milbourn,* Chief Appellate Lawyer, and *Robert J. Berlin,* Assistant Prosecut-ing Attorney, for the people.

*William J. McGrail, Jr., P.C.* (by *William J. McGrail, Jr.,* and *Carole A. Murray),* for defendant on appeal.

Before: DANHOF, C.J., and ALLEN and M. E. DODGE,* JJ.

PER CURIAM. Defendant was convicted by a jury of first-degree murder, MCL 750.316; MSA 28.548, and felony-firearm, MCL 750.227b; MSA 28.424(2). He was sentenced to consecutive prison terms of two years on the felony-firearm and life on the first-degree murder. He appeals as of right, raising 12 issues.

The charges arose out of the shooting death of defendant's wife, Delores Lobaito. The body was discovered by defendant and his brother and sister-in-law on the morning of October 9, 1980, in the bedroom of the house where Delores and defendant lived. The cause of death was a single .38 caliber bullet to the head.

I

Defendant first argues that the trial court erred in admitting the murder weapon into evidence. Defendant moved to suppress the weapon on the ground that it was the product of an illegal search and seizure. The trial court denied the motion finding that defendant had consented to the search conducted without a warrant.

The United States and Michigan Constitutions protect individuals from being subjected to unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. Evidence obtained as a result of an illegal search and seizure may not be

---

* Circuit judge, sitting on the Court of Appeals by assignment.

admitted at trial. *People v Kaigler,* 368 Mich 281, 299; 118 NW2d 406 (1962), citing *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961). Search and seizure conducted without a warrant is unreasonable per se unless it falls within a recognized exception to the warrant requirement. *People v Whalen,* 390 Mich 672, 677; 213 NW2d 116 (1973). Consent is one such exception. *Kaigler, supra.* In *People v Brown,* 127 Mich App 436, 440-441; 339 NW2d 38 (1983), a panel of this Court summarized the rules for determining whether the defendant has consented to a search conducted without a warrant:

"When consent is alleged, the burden is on the prosecution to prove by clear and positive evidence that the consent was unequivocal and specific, freely and intelligently given. *Kaigler, supra,* p 294. Whether a consent is valid is a question of fact to be decided upon the evidence and all reasonable inferences drawn from it. *People v Chism,* 390 Mich 104, 123; 211 NW2d 193 (1973). The totality of the circumstances must be examined. *People v Reed,* 393 Mich 342, 363; 224 NW2d 867 [1975], *cert den* 422 US 1044; 95 S Ct 2660; 45 L Ed 2d 696, 422 US 1048; 95 S Ct 2665; 45 L Ed 2d 701 (1975). The prosecution need not demonstrate that the defendant had knowledge of the right to refuse to allow the search. *People v Klager,* 107 Mich App 812, 816; 310 NW2d 36 (1981). Rather, such knowledge is but one factor to be considered in a suppression hearing. *Reed, supra,* pp 362-363. Conduct itself can, under proper circumstances, be sufficient to constitute consent. See *People v Whisnant,* 103 Mich App 772, 780-781; 303 NW2d 887 [1981], *lv den* 411 Mich 960 (1981)."

The trial court's conclusion on a motion to suppress evidence will not be overturned unless it is found to be clearly erroneous. *People v Brown, supra,* p 441. A ruling is clearly erroneous when the reviewing court is left with a definite and firm

conviction that a mistake has been made. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

We now turn to the evidence presented at the suppression hearing to determine whether the trial court erred in finding consent. The police arrived and secured the scene shortly after they were called by defendant's brother, Thomas Lobaito. Approximately ten minutes after they arrived, defendant left the house and went to a next-door neighbor's home. Subsequently a police officer asked Thomas if any guns were kept in the house. Thomas then asked defendant, who gave him the location of a .38 caliber gun and a .32 caliber gun kept in the house. Thomas relayed this information to the police, but they were unable to find the weapons.

Defendant and Thomas were requested to go to the police station to help in the investigation. Defendant was interviewed twice and was asked if he would submit to a polygraph test and a paraffin test, and was asked if he would sign a waiver granting police the authority to search his car. Upon questioning of defendant, Thomas became very upset and stated that the police should be out trying to find the real killer. At that point defendant told the police that "I want you to go and do everything in your power to get the killer of my wife".

Lieutenant Scott was in charge of the investigation and was at the scene on the afternoon of the killing. Scott was informed of the defendant's statement quoted above. At approximately 6 p.m., Scott was looking into defendant's unattached garage when he noticed a child's chair that seemed out of place. Above the chair Scott noticed a bulge in the masonite paneling in the garage. Scott stood

on the chair and reached behind the loose paneling, where he found a .38 caliber gun wrapped in a homemade silencer made of foam rubber. The gun was later determined to be the murder weapon. Defendant's other gun, a .32 caliber handgun, was also found behind the paneling.

The trial court found that defendant's statements and conduct amounted to a consent to the search without a warrant:

"Defendant obviously knew that the police would look in the upstairs dresser drawer for the revolvers following his brother's inquiry. There is no record of an objection. It affirmatively appears that defendant was aware of the ongoing police investigation. This is evidenced by his comments to his brother during the latter's argument with Inspector Peters. In point of fact, defendant urged the police at this time to 'do everything they could' to find his wife's killer. The combination of these circumstances, the absence of any objection at the time, and the affirmative exhortation to the police to press onward can do no other but compel a conclusion that defendant consented to searches as a part of the ongoing police investigation."

Upon examining the totality of the circumstances, *Schneckloth v Bustamonte,* 412 US 218; 93 S Ct 2041; 36 L Ed 2d 854 (1973), we find no clear error in this decision. Defendant was aware of the police activities in his home and at no time did he register an objection or attempt to limit their access to the home and surrounding area. To the contrary, defendant expressly exhorted the police to do everything in their power to find the killer. The words and actions of defendant communicated to the police that he wanted them to do more than just remove his wife's body; he wanted them to investigate the crime and find the killer. We agree with the trial court that defendant's

words and actions sufficiently establish consent to the search of the premises without a warrant.

## II

The day following the murder the police obtained a search warrant and seized certain other items from defendant's home. Defendant argues that since the affidavit in support of the search warrant referred to the illegally seized murder weapon, the warrant was invalid and evidence seized pursuant thereto was inadmissible under the fruit of the poisonous tree doctrine.

Having concluded that the murder weapon was legally obtained, we reject this argument and hold that the search warrant was valid.

## III

Defendant next argues that his statement given to the police in the early evening of October 9, 1980, was made involuntarily and should have been suppressed. Defendant's motion to suppress was denied by the trial court and the statement was admitted into evidence. We note that the statement did not concern the crime and was not inculpatory.

The voluntariness of a defendant's statement is a question of fact to be determined by reviewing the totality of the circumstances. *People v Prast (On Rehearing),* 114 Mich App 469, 483; 319 NW2d 627 (1982). In reviewing the trial court's decision, this Court must examine the whole record and make an independent determination on the issue of voluntariness. *People v Robinson,* 386 Mich 551, 557; 194 NW2d 709 (1972). Absent a definite and firm conviction that the trial court erred, this Court will affirm its decision. *People v Prast,*

*supra,* p 484. In the case at bar, defendant was interviewed twice in the early afternoon and a third time in the evening following the discovery of the murder weapon in defendant's garage by the police. Defendant was informed of and waived his *Miranda* rights [*Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966)]. We have reviewed the record and find no indication of involuntariness. There is no evidence that the police used force, threats, or coercion. Defendant asserts that the police were required to inform him that they had found the murder weapon. However, defendant cites no authority or rationale for the proposition that police officers must inform the suspect of the evidence they have before questioning him. We conclude that the trial court did not err in ruling the statement voluntary and admissible.

## IV

Defendant next argues that he was prejudiced by the late indorsement of two witnesses. The late indorsement of witnesses is a matter within the trial court's discretion. MCL 767.40; MSA 28.980. That discretion should be exercised with due regard for the defendant's right to a fair trial. *People v Cyr,* 113 Mich App 213, 223-224; 317 NW2d 857 (1982). Late indorsement may be permitted and a continuance granted to prevent prejudice to the defendant. *People v Sullivan,* 97 Mich App 488; 296 NW2d 81 (1980). Where defense counsel fails to request a continuance or time to interview a witness indorsed during trial it tends to negate the argument that tardy indorsement resulted in prejudice. *People v Yacks,* 49 Mich App 444; 212 NW2d 249 (1973).

Defense counsel's failure to object to the indorse-

ment of witness Craprotta bars appellate review of the issue. Defense counsel did object to indorsement of witness Gleason. The prosecutor argued that the late indorsement was necessary because the defense theory was made known during opening argument, to wit: that unknown persons had murdered the victim, perhaps by coming through the backyard into the house. Gleason's testimony tended to negate that theory, because he had a view of defendant's backyard during the period in question.

There is no indication that defense counsel was unable to interview the witness prior to his taking the stand. We have reviewed the record and find no evidence of prejudice. The trial court did not abuse its discretion in permitting delayed indorsement of this witness.

V

On a special record, Marie Lobaito, defendant's sister, testified that she heard the victim's father make a statement at the funeral home while viewing his daughter's body. The father allegedly said, "Why her, they wanted me". The statement was purportedly made on the third day Delores Lobaito's body was laid out at the funeral home, four days after the murder. Defendant unsuccessfully sought admission of this evidence as an excited utterance under MRE 803.

MRE 803(2) provides in part:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * *

"(2) Excited utterance. A statement relating to a startling event or condition made while the declarant

was under the stress of excitement caused by the event or condition."

There are three requirements for application of this exception: The statement (1) must arise from a startling occasion; (2) must be made before there is time to contrive or misrepresent; and (3) must relate to the circumstances of the startling occasion. *People v Kreiner,* 415 Mich 372, 378-379; 329 NW2d 716 (1982); *People v Gee,* 406 Mich 279, 282; 278 NW2d 304 (1979). Admission of hearsay evidence under the excited utterance exception is generally within the trial court's discretion. *People v Petrella,* 124 Mich App 745, 758; 336 NW2d 761 (1983).

We agree with the trial court that the declarant's viewing of his daughter's body in the funeral home four days after the murder cannot be considered a startling event for purposes of MRE 803(2). Nor do we consider the declarant's statement to have been made before there was time to contrive or misrepresent. We conclude that the court did not abuse its discretion in excluding this hearsay testimony.

## VI

Defendant next contends that the trial judge abused his discretion in refusing to admit certain photographs of a field behind defendant's yard. Defendant sought to introduce the photos to show a possible means of approach for a vehicle driven by unknown killers. The photographs were taken by Charles Lobaito, defendant's brother, about 16 months after the murder. Charles testified that at the time the photos were taken the field was in substantially the same condition as on the day of the murder, except the grass may have been some-

what higher at the time of the murder. The trial court excluded the photos because defendant had not laid a proper foundation by showing that the scene pictured in the photographs was substantially as it had been on the day of the crime.

The issue on appeal is whether the court abused its discretion in ruling that there was no adequate foundation for admission of the photographs. A proper foundation is made if someone who is familiar from his own observation of the scene photographed testifies that the photograph is an accurate representation of the scene. *People v Riley,* 67 Mich App 320, 322; 240 NW2d 787 (1976), *rev'd on other grounds* 406 Mich 1016; 289 NW2d 928 (1979); *People v Johnny Johnson,* 113 Mich App 575, 579-580; 317 NW2d 689 (1982).

We agree with defendant that the trial court erred in finding an inadequate foundation for the photographs. Charles Lobaito was able to explain to the jury how the field as depicted in the photograph differed from its condition at the time of the crime, and was thereby able to provide a sufficient foundation. See *People v Greeson,* 230 Mich 124; 203 NW 141 (1925). However, we are convinced that the error was harmless under these facts. Defendant does not suggest any prejudice resulting from the court's decision. The sole purpose for the introduction of the photographs was to show that it was possible for a motor vehicle to drive in the field behind the victim's house. A defense witness testified that the day before the murder she had seen a vehicle in the field. There was other testimony that tire tracks were found in the field. We conclude that the purpose of the photographs was adequately achieved through other evidence and that the trial court's error was harmless beyond a reasonable doubt.

## VII

Gennaro Lobaito, the three-year-old son of Delores and defendant, was present in the house at the time his mother was killed. During the presentation of defendant's case, Gennaro's babysitter testified that three days after the murder Gennaro made several statements concerning the incident.[1] On rebuttal the prosecutor produced child psychologist Dr. Doyal who had treated Gennaro for the purpose of helping him adjust to the death of his mother and separation from his father. Dr. Doyal testified that in his sessions with Gennaro, the boy consistently denied ever seeing his mother hurt. The witness also testified that the narrative attributed to Gennaro by the babysitter was inconsistent with the speech pattern of Gennaro or any three-year-old child.

Defendant argues for the first time on appeal[2] that Dr. Doyal's testimony was inadmissible under the psychologist-patient privilege statute, MCL

---

[1] The babysitter testified as follows:

"*A.* * * * He [Gennaro] looked up at me and just out of the clear blue he said, 'Susan, you know, my mother's dead, don't you?'

"*Q.* Was there any response by you?

"*A.* I said, 'Gerry, come and sit on my lap. I'll put my arms around you.' I said, 'It will be all right.'

"*Q.* What else, if anything, was stated at that time?

"*A.* Well, he just—he paused for a couple of seconds. And then he just said, 'Three men came into the house dressed in uniform and they told me to get into my room.' And that the men wouldn't hurt him. And he said, 'I did.' And he said, 'Then I saw them spray something in my mommy's face.' And he said, 'I heard them leave.' And he said, 'I got into bed with my mother.' And he said, 'See how our hands are nice and pink, Susan, my mommy's hands was white and cold.' And then he said, 'As I looked over at her face * * *' and then he said, '* * * I saw blood dripping from her mouth.' "

[2] Defense counsel objected in the trial court on the ground that Dr. Doyal had no legal authority to render treatment to Gennaro. The psychologist-patient privilege was not raised.

333.18237; MSA 14.15(18237).[3] We find that defendant's failure to raise this issue in the trial court precludes appellate review. *In the Matter of Atkins,* 112 Mich App 528, 542; 316 NW2d 477 (1982), *lv den* 413 Mich 912 (1982). Moreover, even if the issue had been preserved we would find that defendant may not assert the psychologist-patient privilege in this case. The purpose of the privilege statute is to protect the confidential nature of the psychologist-patient relationship. See *Gaertner v Michigan,* 385 Mich 49; 187 NW2d 429 (1971).[4] Defendant would assert the privilege in this case not to preserve the confidentiality of the child's statements to the psychologist, but to exclude potentially harmful testimony in a murder trial. Even assuming that defendant was the child's guardian, we conclude that defendant was not entitled to assert the statutory privilege in this case.

Defendant on appeal also relies on the physician-patient privilege statute, MCL 600.2157; MSA 27A.2157. Again, defendant did not preserve this issue with a timely objection. Furthermore, it is clear that the statute does not apply to the present case since Dr. Doyal was not a person duly authorized to practice medicine or surgery.

---

[3] MCL 333.18237; MSA 14.15(18237) provides in part:

"A psychologist licensed or allowed to use the title under this part or individual under his or her supervision shall not be compelled to disclose confidential information acquired from an individual consulting the psychologist in his or her professional capacity and which information is necessary to enable the psychologist to render services. Information may be disclosed with the consent of the individual consulting, or if the individual consulting is a minor, with the consent of the minor's guardian."

[4] Although *Gaertner v Michigan,* 385 Mich 49; 187 NW2d 429 (1971), dealt with the physician-patient privilege statute, MCL 600.2157; MSA 27A.2157, we believe the purpose of MCL 333.18237; MSA 14.15(18237) is the same.

## VIII

Defendant next contends that the trial court erred in permitting attorney Dan Stepek to testify concerning statements made by Gennaro in his presence during defense counsel's interview with the child. Apparently the victim's family, with whom Gennaro was staying, would not permit defense counsel to interview the boy. A stipulated court order was entered permitting the interview on the condition that another attorney and a doctor be present. Attorney Stepek testified at trial as to some of the statements made by Gennaro. Defendant now contends that Stepek's testimony violated his Sixth Amendment right to counsel.

We find that defendant's failure to object to Stepek's testimony at trial precludes appellate review of this issue. Even if error occurred, we are unable to conclude that the challenged testimony resulted in manifest injustice so as to require reversal.

## IX

Medical examiner Werner Spitz testified that he estimated the time of death to be about 8:30 a.m. During cross-examination it was revealed that Dr. Spitz had signed a death certificate which indicated that the time of death was 10 a.m. Dr. Spitz's explanation for the inconsistency was that the death certificate listed the time the victim was pronounced dead, rather than the actual time of death. Defendant later requested the trial court to instruct the jury that under MCL 333.2894 and 333.2898; MSA 14.15(2894) and 14.15(2898) it is a misdemeanor to knowingly make a false statement in a death certificate. The court granted defendant's request and the jury was so instructed.

During deliberations the jury requested that a portion of Dr. Spitz's testimony be reread. The trial court denied defendant's request to also reread the pertinent jury instruction. Defendant assigns the failure to reread the jury instruction as error.

When a jury requests that testimony be reread to it, the reading and extent of the reading is a matter within the trial court's discretion. *People v Howe*, 392 Mich 670, 675; 221 NW2d 350 (1974). In this case the jury made a request for specific testimony. Defendant cites no authority for his position that a trial court has a duty to go beyond the jury request and furnish additional material requested by a party. We find that the trial court did not abuse its discretion in denying defendant's request to reinstruct the jury.

## X

Defendant next challenges the trial court's refusal to instruct the jury that a "finding of not guilty does not necessarily mean that you find the defendant innocent". We find that the trial court's instructions, which were based on the standard criminal jury instructions, were adequate and that the court did not abuse its discretion in declining to give the additional instruction.

## XI

Following the close of evidence, a question was directed to the trial court from the jury whether members of the jury could volunteer to be excused rather than being randomly eliminated. The trial court discussed the matter with both counsel and defendant, and defendant personally indicated that he wanted to use the "blind draw" method of

eliminating alternate jurors. The trial court followed defendant's request. Defendant's contention that the trial court erred in failing to excuse two jurors who asked to be excused prior to deliberations is not supported by the record and is entirely without merit.

## XII

Defendant finally argues that the mandatory sentence of life imprisonment constitutes cruel and unusual punishment. We reject this contention on the authority of *People v Hall,* 396 Mich 650; 242 NW2d 377 (1976).

Affirmed.